CHRIS. J. BISGAARD, Appellee, v. F. E. DUVALL, Appellant.

**FALSE IMPRISONMENT:** Liability—Instigating Arrest—Insufficiency of Showing. A person who causes, instigates and procures an unlawful imprisonment is liable in damages therefor. Evidence reviewed and held insufficient to show liability.

PRINCIPLE APPLIED: Plaintiff was taken into custody, without a warrant, as an insane person. The defendant, at the request of the physician member of the commissioners of insanity, had reported to said physician the condition of plaintiff. Later, the physician directed the sheriff to arrest plaintiff. The sheriff started for the farm where plaintiff lived, fully intending to arrest him. At the farm, the defendant, at the request of the sheriff, pointed out plaintiff and said: ''That man has given us lots of trouble. I want you to take him and throw him in. He is dangerous.'' The arrest of plaintiff had the approval of defendant. *Held,* insufficient to show liability on the part of defendant.

**FALSE IMPRISONMENT:** Instigating Arrest—Evidence—Admissibility. In an action for false imprisonment of plaintiff without warrant, as an insane person, wherein defendant denied having caused the arrest, evidence is admissible (a) as to what the physician member of the commissioners of insanity said to de-

fendant by way of requesting defendant to report the condition of plaintiff to the physician, and (b) what the defendant said to the physician when he did so report.

**WITNESSES:** Impeachment — Inconsistent Statements — Witness
3    Confined to Limits of Question. As preparatory to impeaching a witness by showing that certain statements denied by the witness were made, a foundation question should be put to the witness, in which question should be embraced the matters on which it is intended to base the impeachment. Substantially the same matters should be carried over into the question put to the impeaching witness, and the witness should be confined thereto and not permitted to wander away into other matters.

**FALSE IMPRISONMENT:** Insane—Arrest Without Warrant—Law
4    Applicable. The law governing the right to arrest without warrant a person for crime has no application to the right to arrest without warrant a person on the charge of being insane.

**FALSE IMPRISONMENT:** Insane—Arrest or Detention Without
5    Warrant—Right to Make. An insane person may, without any adjudication, be lawfully arrested or detained without a warrant, provided such arrest or detention is reasonable and in good faith. It is radically erroneous to instruct the jury to the contrary. An insane person stands on a very different plane from that of a criminal.

**APPEAL AND ERROR:** Argument—Wealth and Poverty of Liti-
6    gants. An argument dealing with the relative wealth and poverty of the litigants is highly improper.

*Appeal from Audubon District Court.*—HON. E. B. WOODRUFF, Judge.

WEDNESDAY, APRIL 7, 1915.

ACTION to recover damages for the breach of a contract of employment, and for the false and malicious arrest of plaintiff as an insane person. The defense was a general denial, and defendant also pleaded a settlement, accord, and satisfaction of plaintiff's claims. The case was tried to a jury, resulting in a verdict for plaintiff on the count for false arrest, but finding for defendant on the claim for damages for breach of contract. The verdict was for $2,000.00, upon

which judgment was rendered, and defendant appeals.— *Reversed.*

*J. M. Graham, Ross & Kerberg,* and *Willard & Willard,* for appellant.

*Mantz & White* and *H. M. Boorman,* for appellee.

DEEMER, C. J.—The petition was in two counts. The first charged the defendant with having wrongfully and unlawfully discharged plaintiff and his wife from his employ, he, defendant, having by oral contract engaged them to work upon his farm for the period of one year from and after March 12, 1912, agreeing to pay the plaintiff $30.00 per month, and his wife, $10.00 per month, and to furnish them a house in which to live and board for the period of the contract. The second was for an alleged false, malicious, and unlawful arrest and detention of plaintiff as an insane person, by the sheriff of Audubon County, at the instigation of the defendant.

Defendant denied the employment of plaintiff and his wife for any definite length of time, and pleaded that he discharged plaintiff for good and sufficient cause. He denied that he caused the sheriff of Audubon County to arrest the plaintiff, and averred that he had nothing to do with the arrest. He also pleaded that he had reason to believe from plaintiff's actions and conduct that he was insane, and that his sanity should be inquired into; that he informed one Dr. Brooks, the physician member of the board of commissioners of insanity of Audubon County, Iowa, and also plaintiff's personal physician, of the things he had learned and observed regarding plaintiff's conduct, and requested his advice with reference thereto. That he gave this information to the physician in good faith and without malice for the purpose of guarding his (defendant's) family, with whom plaintiff was then living, and for plaintiff's own benefit.

He averred that his communication with the physician

was privileged, was true, and made for good motives, and without malice. He also pleaded a settlement with plaintiff.

The case was tried on these issues, and, as the jury eliminated the first count of the petition by its verdict, we have nothing to do with the issues raised thereby, save as they may have an indirect bearing upon the second count of the petition. The jury found that plaintiff was falsely and unlawfully arrested by the sheriff of Audubon County, and that defendant was responsible for this arrest; and although plaintiff was under restraint for but a few hours, awarded him damages in the sum of $2,000.00. It is said that these damages were all compensatory, and that nothing was allowed by way of punishment.

Something like twenty-eight errors are assigned; but as the argument centers around eight main points, we shall confine our discussion to what seem to be the material and controlling propositions.

It is conceded that plaintiff was taken into custody by the sheriff of the county without a warrant, as an insane person or as one supposed to be mentally unsound; that he was

1. FALSE IM-PRISONMENT: liability: instigating arrest: insufficiency of showing.

taken from the farm where he was living to the town of Audubon, placed in jail for an hour or so, then released and taken back to the farm, and that no complaint or information was ever filed by anyone against him.

Defendant contends, however, that he had nothing to do with the arrest; that he did not instigate it; and that all he did was to inform the physician member of the county board of commissioners of insanity as to what he had observed of the conduct and actions of plaintiff at his (the doctor's) request; and that the doctor on his own motion sent the sheriff out to arrest the plaintiff, and in all things directed the sheriff as to how to proceed and as to what to do with plaintiff.

The sheriff said that Dr. Brooks suggested to him that he make the arrest; that he had no talk with defendant about it until after he concluded to make the arrest; that, when he

went to the farm where plaintiff and defendant were both living to make the arrest, defendant said to him (the sheriff) "That man has given us lots of trouble. I want you to take him and throw him in; he is dangerous." The sheriff said that when he left town (Audubon), he did so with intent to bring plaintiff back; that he took his deputy with him and expected to make the arrest; and that nothing was then said by defendant about making the arrest. After the arrest was made, he (the sheriff) told defendant to come in the next day and to bring two witnesses (naming them) with him. The only testimony tending to connect defendant with the arrest is some kind of an inference that he (defendant) gave some information to Dr. Brooks which led thereto; or that, at the time the arrest was made, he advised the officer to do so, or pointed out the man, or approved of the arrest. As to this latter claim, the most that can be said is that defendant expressly approved of the arrest, although there is no showing that he directed it, or that he was responsible therefor.

The officer testified that he made it at the suggestion of the doctor; that he went out to arrest plaintiff and did so, and there is no showing whatever that what defendant said or did had the slightest thing to do with the arrest. The mere fact that defendant pointed out the plaintiff and expressed the opinion that he should be arrested does not make him liable if the person who made the arrest did so on his own motion or at the instigation of another. *Hopkins v. Crowe,* 7 Car. & P. 373; *Burns v. Erben,* 1 Rob. (N. Y.) 555; *Veneman v. Jones,* 20 N. E. (Ind.) 644.

In the instant case, the arrest was made at the instigation of Dr. Brooks, and there is no showing that defendant did more than to report conditions as he found them to the doctor at his (the doctor's) request. The singular thing about this record is that, when defendant offered to show what the doctor said to defendant about reporting plaintiff's condition as indicating his mental condition, and as to what he

2, 7. FALSE IM-
PRISONMENT:
instigating arrest: evidence: admissibility.

reported to and said to the doctor just prior to plaintiff's arrest, the trial court sustained objections to questions calling for this information on the ground that it was hearsay, immaterial and irrelevant.

Manifestly, these rulings were erroneous and highly prejudicial, as they went to the very vitals of the case. In so far as this record discloses, the arrest was instigated by Dr. Brooks alone, and it is not shown that defendant had any such connection therewith as to make him liable. The most that can be said for it is that it shows that at the doctor's request, defendant truthfully reported conditions as he found them, and that the doctor, on his own motion and without any request or indication from the defendant that he wished him to do so, had the sheriff of the county arrest the plaintiff. Under such a showing, no recovery could be had under the law.

3. WITNESSES: impeachment: inconsistent statements: witness confined to limits of question.    III. A witness called to impeach the defendant was permitted over defendant's objection to detail other things which were said, or were claimed to have been said, at a certain time not included in the foundation question, and not in any sense rebuttal.

These extraneous matters were highly prejudicial and should not have been admitted. The law upon this proposition is so well settled that we need not do more than state it. Other rulings on testimony are objectionable, but as they are not likely to be repeated on a retrial, we do not set them out.

IV. The trial court in its instructions submitted the case on the theory that plaintiff was arrested for some criminal offense, and over defendant's exceptions and objections stated

4. FALSE IMPRISONMENT: insane: arrest without warrant: law applicable.    the law applicable to such arrests. This was an unjustifiable departure from the issues made by the pleadings and was manifestly prejudicial to the defendant. In its thirteenth instruction, the court departed somewhat from its other

instructions, which related to arrests for criminal offenses, and gave the following rule as to the arrest of insane persons:

"13th. In regard to persons claimed to be insane the statute provides that an information under oath must first be filed and that then the commissioners of insanity may issue a warrant requiring that such person be brought before them for investigation upon such charge, and there is no statute which provides that anyone who is claimed to be insane shall be taken into custody in any other way except upon a warrant issued as above provided. And under both of these statutes or either of them, you are instructed that the arrest of this plaintiff, without a warrant for his arrest having been issued, was an unlawful arrest."

This instruction is complained of, and we are constrained to hold that the complaint is good.

An insane person stands upon a different plane from that of a criminal, and for his own good, as well as for the protection of the community, he may often be restrained by any person, especially by anyone having an interest in him, or, by one whose safety may depend upon his detention, may be taken in charge without a warrant. The restraint of an insane person or of a person claimed to be insane is not designed as a punishment for an act done, and, as said in *Chavannes v. Priestley,* 80 Iowa 316, 320:

"It is not a case in which he is adjudged at fault, or in default, and for which there is a forfeiture of liberty or property, but only a method by which the public discharges its duty to a citizen. The misfortunes of citizens sometimes place them where, for their care and preservation, restraints are necessary, and *such restraints are even justified at the hands of private persons.* They are not in such cases 'deprived of liberty,' within the meaning of the constitution; and plaintiff bases his claim in this respect upon the constitutional

provision that 'no person shall be deprived of life, liberty or property without due process of law.' "

It is well established that an insane person, without any adjudication, may lawfully be restrained of his liberty for his own benefit, either because it is necessary to protect him against a tendency to suicide or to stray away from those who would care for him, or to protect others from his assaults or other depredations, or because proper medical treatment requires it. Cooley on Torts, 3rd Ed. Vol. 1, p. 313; *People ex rel. Peabody v. Chanler*, 25 L. R. A. (N. S.) 946, 89 N. E. 1109.

5. FALSE IM-
PRISONMENT:
insane: arrest
or detention
without war-
rant: right to
make.

Of course, all such arrests or restraints must be reasonable and in good faith, and instructions as to such restraints should be carefully guarded. But it is manifestly erroneous to say, as the trial court did in this case, that an insane person cannot be taken into custody or restrained in any other way than upon a warrant issued as prescribed by law. There was a claim in this case that plaintiff was taken into custody upon the suggestion of Dr. Brooks because he was insane and was likely to do violence to himself and to others, and the law upon that subject should have been given to the jury, and the court should have permitted defendant to introduce testimony in support of his theory of the case.

V. Misconduct of plaintiff's counsel in the examination of jurors on their *voir dire* and in argument of the case to the jury was made a ground for a new trial. As the case must be reversed on other grounds, it is not necessary to do more than say that counsel went too far in bringing plaintiff's poverty and defendant's wealth before the jury, and in attempting to inflame the passions and arouse the sympathies of the triers of the facts. Upon a retrial, these should not be repeated. We have had some difficulty in understanding the case because of the method in which it was tried; but

6. APPEAL AND
ERROR: argu-
ment: wealth
and poverty of
litigants.

the whole record indicates that defendant did not have a fair trial, and was not permitted to introduce testimony in support of his defense. There is scarcely a scintilla of testimony tending to show that defendant had anything to do with plaintiff's detention and arrest, and he was not given the opportunity to show his connection therewith. He was not permitted to show what Dr. Brooks said to him about reporting plaintiff's conduct or what he said to the doctor, or what, if anything, he advised the doctor to do about arresting the plaintiff or taking him into custody. The officer testified that he made the arrest at the suggestion of Dr. Brooks, and that defendant, so far as he knew, had nothing to do with it.

*2, 7. FALSE IMPRISONMENT: instigating arrest: evidence: admissibility.*

On the instructions as given, there should, as we think, have been a verdict for the defendant. The jury specially found that the defendant was not actuated by malice in what he did, and that he was justified in discharging plaintiff from his employ, thus indicating that the arrest and detention of plaintiff was not a method adopted by defendant to get plaintiff off his (defendant's) farm.

For the errors pointed out, the judgment must be and it is—*Reversed.*

EVANS, PRESTON and SALINGER, JJ., concur.