# FAY EPPERSON v. R. FRANK ELLIOTT.

Springfield Court of Appeals, July 8, 1922.

1. **DEATH: Killing Held Justified.** Plaintiff's evidence in an action for death *held* to show the killing was justified, where deceased came up to automobile in which defendant and a companion were seated, on a lonely road just at dark, deceased being a stranger to defendant, and pointed a gun at defendant, commanding him to get out.

2. **TRIAL PRACTICE: Verdict to be Directed for Defendant When Plaintiff's Evidence Establishes Defense.** The testimony given in behalf of plaintiff establishing the truth of the facts set up as new matter in the answer, and they being sufficient to preclude recovery, verdict must be directed for defendant.

Appeal from Circuit Court of Jasper County.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*A. W. Thurman, Paul G. Koontz* and *P. D. Decker* for appellant.

*Walden & Andrews, C. E. Hastings* and *Howard Gray* for respondent.

FARRINGTON, J.—The plaintiff, Fay Epperson, wife of Clarence Raymond Epperson, deceased, brought this suit for damages against the defendant for wrongfully and unlawfully shooting with a pistol and killing Clarence Raymond Epperson, husband of plaintiff.

The answer of defendant admits the killing of plaintiff's husband but denies that it was wrongful and unlawful, and affirmatively alleges that the act was justifiable. A trial to a jury resulted in a verdict of $3000 for plaintiff.

The trial court sustained a motion for a new trial on two grounds, first because of error in an instruction on the measure of damages; and lastly because the court erred in refusing to give defendant's instruction at the close of all the evidence directing a verdict for the defendant. Appellant brings the cause here assigning error against the trial court for making the order granting the motion for new trial and contends that the case should have been submitted to a jury, and that there was no error in instructions.

The view that we take of this case eliminates all questions except the last ground upon which the court granted the motion for a new trial, which is that there should have been a directed verdict for the defendant. The law seems to be fairly well settled in this State that where it is shown that one shoots and wounds another, a prima-facie case for damages is made out and it then devolves upon the defendant to show that the shooting occurred without fault on his part. [Morgan v. Mulhall, 214 Mo. 451, 114 S. W. 4.] Therefore, under the pleadings of this case, when it was charged that the defendant shot Epperson, intending to shoot him, and the defendant admitted the shooting and pleaded justification, the burden fell upon the defendant to show justification for his act.

We now come to the trial of the case. The plaintiff to make her case introduced the notes of the evidence given by the defendant at the coroner's inquest, which was held the day after the tragedy occurred. His version of the affair, under the testimony offered by the plaintiff and the uncontroverted facts as shown by the record, is as follows: That the defendant is forty-three years of age, and a widower; that on the day of the killing Gladys Denton, a young lady of Newton County, Missouri, was twenty-one years of age; that the defendant was a friend of Miss Denton's father and mother and had been their friend before she was born. He was invited to the birthday dinner when she was twenty-one years of age, and after dinner he suggested that he take Miss Denton for a drive in a new Buick automobile which he had just purchased. It was after supper, and they drove south of Neosho and came to a lane or road which led off the main road. They drove up this lane for some distance and came to a gate or stopping place, turned the car around and stopped it on the right hand side of the road and got over on the back seat and were engaged in conversation. A noise was heard by both the defendant and the young lady and they were listening and the remark was made that it was probably some stock in the adjoining fields or pasture. They were still listening when a voice from without the car was heard to say, "Come out of there." The defendant said, "All right." Again the voice from the outside commanded them to come out. The defendant procured a revolver which was in his car, looked through the isinglass in the curtain, and there he saw the muzzle of a gun pointed at him and about a foot from his head—he shot through the isinglass with his revolver and then looked out of the car and saw the deceased, plaintiff's husband, lying on the ground by the rear wheel of the automobile; he then got out and commanded the deceased to put up his hands and asked what he was doing. The deceased put up his hands and said he thought they were bootleggers,

and said something about his wife. The defendant took the shotgun from the deceased, which lay across his body, handed it to the young lady and they immediately started to town and notified the officers of the law, concerning the shooting. When the officers with the defendant drove back to the place where the deceased was shot, he was dead. It was further shown by the plaintiff's witnesses that the deceased had his shoes off when found where he had been shot, and his shoes were found the next day about 100 yards from the place where he was killed. It was also shown that he had on his head what is termed in the evidence as a skull cap. It is shown that the deceased had been an inmate of the Nevada Asylum and had a short time prior to this time been released as cured. The evidence of the defendant and of Miss Denton, who were the only eye witnesses to the tragedy, corroborates the story told by the defendant at the coroner's inquest, which story was adopted by, plaintiff in the trial of this case.

Under this statement of facts no reasonable deduction could be drawn other than that the shooting was justifiable. The plaintiff saw fit to put in testimony from which no reasonable mind could conclude that defendant was not justified in killing her husband under the circumstances. We will add as a fact, if it has not already been shown, that at the time of the killing it was dusk or dark. Under the facts of this case the trial judge should have directed a verdict for the defendant, because plaintiff's testimony tends to show no other thing than that he was justified in killing her husband. On this subject the law has been well settled in this State, and without getting into the tangle now involved in the Supreme Court on the questions of presumptions and prima-facie cases, as shown by the decisions in Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854, and Downs v. Horton, 209 S. W. 595, decided by the Supreme Court in 230 S. W. 103 (both in Division No. 1), and Lafferty v. Casualty Company, 229 S. W. 750 (motion for rehear-

ing in the latter case passed on the same day that the opinion in Downs v. Horton, was handed down), we will decide this case on a well-recognized rule supported by a long line of cases, which rule is that where the testimony given in behalf of the plaintiff establishes the truth of the facts set up as new matter in the answer and these facts are sufficient to preclude a recovery upon the part of plaintiff, it becomes the duty of the trial court, as a matter of law, to direct a verdict in favor of the defendant. This rule, upon which we decide this case, is clearly set forth in the case of Torry v. Hardy, 196 S. W. 1100, l. c. 1102, 1103, where a great number of cases supporting the rule are cited.

Under the facts of this case, as shown by the plaintiff, and the rule of law as announced in this State, the trial court should have directed a verdict for the defendant. We, therefore, affirm the judgment of the trial court on the ground given by the court in the order granting the motion for new trial, which was that the court should have directed a verdict for the defendant at the close of all the testimony. The judgment is affirmed. *Cox, P. J.,* and *Bradley, J.,* concur.