## STOWERS *v.* WOLODZKO

1. APPEAL AND ERROR—EVIDENCE—JURY—VERDICT.
   The Court of Appeals may not upset a jury's findings unless
   the evidence is insufficient to support the verdict and the
   verdict is against the overwhelming weight of the evidence.

2. MENTAL HEALTH—DETENTION—HOSPITALS—TREATMENT.
   Treatment of a patient temporarily detained in a *state* hospital
   by a court order pending a determination of mental disease
   is authorized by statute but no statutory authorization exists
   for treatment of a patient similarly detained in a *private*
   hospital (CLS 1961, § 330.21, as amended by PA 1963, No
   52).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 833 *et seq.*
[2, 3] 40 Am Jur 2d, Hospitals and Asylums § 12.
  41 Am Jur 2d, Incompetent Persons §§ 31, 42.
[4, 6] 41 Am Jur, Physicians and Surgeons § 71.
[5] 41 Am Jur, Physicians and Surgeons §§ 71, 111.
[7–10] 32 Am Jur 2d, False Imprisonment § 75.
  40 Am Jur 2d, Hospitals and Asylums § 19.
[11] 41 Am Jur, Physicians and Surgeons § 108.
[12] 22 Am Jur 2d, Damages §§ 366, 367.

'3. MENTAL HEALTH—HOSPITALS, PRIVATE—DETAINEES—TREATMENT.

A psychiatrist has neither a mandatory nor an implied duty under the mental health statute to treat a plaintiff who has been detained in a private hospital by a probate court order (CLS 1961, § 330.21, as amended by PA 1963, No 52).

4. PHYSICIANS AND SURGEONS—DOCTOR-PATIENT RELATIONSHIP—CONSENT.

The doctor-patient relationship cannot be imposed upon a competent patient without that patient's consent.

5. PHYSICIANS AND SURGEONS — DOCTOR-PATIENT RELATIONSHIP — HUSBAND AND WIFE — CONSENT.

A husband, in providing the necessities of medical services to his competent wife, may not compel her to accept a doctor-patient relationship without her consent.

6. PHYSICIANS AND SURGEONS — PATIENT — TREATMENT — PRIVATE HOSPITAL.

A psychiatrist's treatment of a patient temporarily confined in a private hospital by a court order pending a sanity hearing must be shown to have been necessary treatment in order that it be permissible (CLS 1961, § 330.21, as amended by PA 1963, No 52).

7. FALSE IMPRISONMENT—ELEMENTS—PSYCHIATRIST—HOSPITAL.

Proof of false imprisonment in action by a person detained at a private hospital under a proper court order pending a sanity hearing requires a showing that plaintiff's detention under the order would have ceased earlier but for the actions of defendant psychiatrist in preventing her communicating with persons outside the hospital, and a showing of damages by the extended detention.

8. FALSE IMPRISONMENT — HOSPITALS — PSYCHIATRIC PATIENTS — DETENTION, SECLUSION.

The detention and seclusion of an alleged mentally disturbed person pending a sanity hearing becomes unlawful if the isolation technique employed goes beyond that contemplated by the court order detaining that person.

9. MENTAL HEALTH—HOSPITALS—PSYCHIATRIC PATIENTS—ISOLATION TECHNIQUE.

The isolation of a mentally disturbed person is a proper psychiatric tool which may be unquestioned in cases where it is shown to be necessary and not violative of inherent legal rights.

10. FALSE IMPRISONMENT — HOSPITALS, PRIVATE — PSYCHIATRIC
PATIENTS — INCOMMUNICADO CONFINEMENT — DAMAGES.
  Plaintiff's incommunicado confinement by defendant psychiatrist
  in a private hospital, without plaintiff's consent, was a dep-
  rivation of her legal right to contact persons who could
  represent her rights, and caused her to suffer damages, where
  the probate court order which detained plaintiff did not in-
  tend to prevent her from communicating with persons outside
  the hospital until her sanity hearing.

11. ASSAULT AND BATTERY—PSYCHIATRIST—TREATMENT—CONSENT.
  Seizure of plaintiff at her home and forcible application of
  medication to her without her consent *held*, an assault and
  battery, where a probate court order placing plaintiff in a
  private psychiatric hospital pending a determination of mental
  disease did not give defendant psychiatrist authority to treat
  plaintiff, who was competent to act for herself, and defend-
  ant failed to show that the treatments were necessary (CLS
  1961, § 330.21, as amended by PA 1963, No 52).

12. DAMAGES — FALSE IMPRISONMENT — ASSAULT AND BATTERY —
JURY — REMITTITUR.
  A $10,000 remittitur of a jury award of $40,000 damages for
  false imprisonment and assault and battery was an abuse of
  trial court discretion, where sufficient proof existed to support
  the substantial award and the defendant failed to show pas-
  sion, prejudice or bias of the jury.

Appeal from Wayne, Benjamin D. Burdick, J.
Submitted Division 1 May 15, 1969, at Detroit.
(Docket No. 5,475.) Decided August 28, 1969. Ap-
plication for leave to appeal filed September 18, 1969.

Complaint by Ethel Stowers against Anthony
Smyk, Joseph Wolodzko, and Ardmore Acres Hos-
pital, a Michigan corporation, for false imprison-
ment and assault and battery. Summary judgments
for defendants Anthony Smyk and Ardmore Acres
Hospital. Verdict against Joseph Wolodzko, re-
duced by *remittitur,* and judgment entered. Defend-
ant Wolodzko appeals. Plaintiff cross-appeals. Ver-
dict reinstated.

*Kelman, Loria, Downing & Schneider,* for plaintiff.

*Moll, Desenberg, Purdy, Glover & Bayer,* for defendant.

Before: FITZGERALD, P. J., and LEVIN and T. M. BURNS, JJ.

FITZGERALD, P. J.   Defendant-appellant is a psychiatrist who was found liable by a jury in the Wayne County circuit court for false imprisonment of, and assault and battery on, plaintiff-appellee.   The other defendants below, Dr. Smyk and Ardmore Acres Hospital, were granted summary judgments.

On an order of the Wayne County probate court, initiated by a petition presented by plaintiff's husband pursuant to CL 1948, § 330.21, as amended by PA 1963, No 52 (Stat Ann 1963 Cum Supp § 14.811), and appropriately certified by Doctors Wolodzko and Smyk, plaintiff was taken by ambulance from her home in Livonia to Ardmore Acres, a private psychiatric hospital, on January 4, 1964.   The petition was dismissed on January 27, 1964, on the recommendation of two other doctors appointed by the probate court to examine plaintiff, and she was discharged.   During her stay at Ardmore Acres, she was injected on occasion with drugs on the orders of defendant Wolodzko, despite her stated refusal to consent to any treatment.

The jury verdict did not specify a division of the $40,000 award among the counts of false imprisonment and assault and battery.   The trial court reduced the jury verdict by *remittitur* to $30,000.   Defendant's appeal presents five issues considering his liabilities.   Plaintiff, cross-appealing, requests that we find the trial court erred in reducing the verdict

of the jury by $10,000 in the absence of any substantial reason to do so.

Plaintiff was sent to the hospital under the court order which was based on the relevant and reproduced portions of the following statute. CL 1948, § 330.21, as amended by PA 1963, No 52 (Stat Ann 1963 Cum Supp § 14.811):

"The  *  *  *  *husband*  *  *  *  of a person *alleged* to be mentally ill, mentally handicapped or epileptic,  *  *  *  *may petition* the probate court of said county for an order directing the admission of said person to a hospital, home or institution for the care of the mentally ill,  *  *  *  such petition to contain a statement giving the facts and not the conclusions upon which the allegation of such mental disease is based and because of which the application for the order is made. Upon receiving such petition the court shall fix a day for hearing thereof and shall appoint 2 reputable physicians to make the required examination of such alleged mentally diseased person; such physicians shall file their report duly certified to with the court on or before such hearing.  *  *  *  The court shall also take proofs as to the alleged mental condition or epilepsy of such person, and fully investigate the facts, and, if no jury is requested, the probate court shall determine the question of such alleged mental disease of such person.  *  *  *  *Pending such proceedings for admission* into the proper home, hospital or institution, *if it shall appear, upon the certificate of 2 legally qualified physicians, to be necessary and essential so to do, the court may order such alleged mentally diseased person* to be placed in the custody of some suitable person, or to be removed to *any hospital,* home or retreat to be detained until such petition can be heard and determined, or to be removed to *any state hospital for the mentally diseased for custody and treatment. The period of such temporary detention shall not exceed 60 days *  *  *  .*" (Emphasis supplied.)

The actions of the defendant which were evaluated by the jury in their assessment of his liability are best reiterated by a recitation of the surrounding facts in chronological order, subject to possible criticism of irrelevancy to the exact charges against the defendant.

### Before January 4, 1964

Plaintiff, a housewife, resided at home in Livonia with her children and husband. Divorce was being contemplated. On December 6, 1964, defendant appeared at the house and introduced himself to plaintiff as Dr. Wolodzko. She states that she did not know that he was a psychiatrist or that he was responding to a request of the husband that he talk with plaintiff. Light conversation ensued for a short period of time, the content of which is debated by the parties. The husband was present, as were the children. Several days later, defendant and plaintiff conversed briefly on the telephone. On the basis of these contacts with plaintiff, defendant determined in his certificate to the probate court that plaintiff was suffering from paranoid schizophrenia and should be hospitalized.

### January 4, 1964

The husband obtained the requisite court order and allegedly requested defendant to examine plaintiff again to see if hospitalization was necessary. At 7 p.m., plaintiff answered the door, whereupon two ambulance attendants told her that she should accompany them to the hospital. The exact location of defendant is not definite, but we are certain that he was in the house during the events that then occurred. The attendants pursued plaintiff through the house and after a brief rebellion, she agreed to

accompany them to the hospital. Before leaving, defendant would not respond to her request to permit her to use the telephone, and when she attempted to, it was taken from her. She made it clear that she certainly didn't want to go to the hospital, but she did go anyway, escorted by the two attendants. During these events, her husband was upstairs in the home and did not interfere.

## At the Hospital

The husband signed a medical authorization form on behalf of plaintiff. She 1) refused to consent to the treatment by the defendant, 2) refused any medication, and 3) refused to eat for five days. She was placed in a barred, locked and bare room for six days. Defendant permitted no phone calls or letters in or out. Defendant telephoned orders in and prescribed certain medication. He often visited her during her stay. She was allowed to see her husband and children, but the "no communications in or out" rule remained in effect, until a few days before she was discharged. She was forcibly held down by nurses until she acquiesced to a second injection of a tranquilizer. She had previously been given a similar injection over her objection. The injections were ordered by defendant.

The jury determined that the above facts were sufficient to find defendant guilty of the torts of false imprisonment[1] and assault and battery.[2] He must show this Court that this evidence was not sufficient and that the verdict was against the overwhelming weight of the evidence before we may upset the findings of the jury.[3]

---

[1] 8 Callaghan's Michigan Digest, False Imprisonment, § 1, *et seq.*
[2] 2 Callaghan's Michigan Digest, Assault and Battery, § 18, *et seq.*
[3] *McConnell* v. *Elliott* (1928), 242 Mich 145; *Lake Oakland Heights Park Association* v. *Township of Waterford* (1967), 6 Mich App 29; *Wilson* v. *Phillips* (1968), 12 Mich App 58; *McGever* v. *Schaar* (1962), 365 Mich 481.

This burden is not met.  Defendant's first argument is composed of a combination of assumed factors, all leading to the erroneous conclusion that his treatment of plaintiff was within the scope of a doctor-patient relationship as he had an authorized duty, under the court order, to treat the plaintiff.  Reference to the statute quoted above shows that treatment of a patient temporarily detained in a *state* hospital is authorized by law, but that no mention of treatment of a patient in a *private* hospital, such as Ardmore Acres, is made.[4]  Therefore, no mandatory nor implied duty of the defendant to treat plaintiff attached by reason of the court order. The result is that the treatment of plaintiff as a patient becomes subject to the same examination by the jury as if there was no court action involved at all.

The doctor-patient relationship cannot be imposed upon a competent patient without her consent.  We refer to ICLE, Medical Malpractice (Michigan Specialty Handbook No. 5, 1965), p 33:

"[There is] an absolute right on the part of the patient to choose whether or not he will submit to the medical procedure—at least in so far as the private physician is concerned: No one to my knowledge has suggested that the physician be given discretion to disregard that right."

Noting that defendant does suggest just that in this case, we may qualify this statement by adding "competent" before "patient" and apply it to this case.  The defendant cites cases allegedly to the contrary, but it is not correct to state that a husband, in providing the necessities of medical

---

[4] Plaintiff also points out that CLS 1961, § 330.20 (Stat Ann 1956 Rev § 14.810), requires that the certifying physician not be an attending physician in the institution to which it is proposed to confine the patient.  Defendant was on the staff at Ardmore Acres.

services to his competent wife,[5] may compel her to accept the relationship without her consent.[6] At the time of defendant's treatments, she had not been, nor has she ever been, adjudged to be mentally incompetent.

We also take issue with defendant's argument to the effect that since there was a sufficient showing to confine the plaintiff, she was required to accept his treatment. Since defendant also agrees by inference that plaintiff was not mentally incompetent to give or withhold consent, his total argument must rest and fall on the allegation that usual medical treatment is permissible in the face of non-consent where the patient has been temporarily confined on the petition of her husband in a private hospital pending a sanity hearing.[7] However, we must add as did the trial court in its instruction, that the treatment (classifying the entire spectrum of defendant's actions as "treatment") must be shown to have been necessary treatment in order that it be permissible. It is apparent that it is not desirable to give the doctor *carte blanche* authority to proceed with treatment in such cases in the absence of consent of a competent patient. It is not sufficient to impose liability though by simply determining that treatment should not have been given plaintiff without her consent. We must further determine if the treatment actually given was necessary to her detention as it was not directed by statute and whether it constituted false imprisonment and assault and battery. We do not desire to evaluate every medical action of the defendant by second-guessing the jury and by analyzing the propriety of the actions by a

[5] The cases of *In re LaFreniere's Estate* (1949), 323 Mich 562, and *City of Detroit* v. *Eisele* (1961), 362 Mich 684, do not so hold.

[6] A competent married woman is empowered to make her own contracts. CL 1948, § 557.51 (Stat Ann 1957 Rev § 26.181).

[7] *Maben* v. *Rankin* (1961), 55 Cal 2d 139 (10 Cal Rptr 353, 358 P2d 681).

comparison with customary medical procedure. Rather, the question is whether the torts charged were supported by the evidence as determined by the jury.

## False Imprisonment

We have seen that plaintiff was prevented by defendant's orders from communicating with people "outside", both at her home and at Ardmore Acres. By subterfuge, she did manage to contact her lawyer near the end of her stay, and she was discharged shortly thereafter. Defendant correctly states that she must have proven that her detention under a proper court order would have ceased earlier but for his allegedly wrongful false imprisonment of her, and that she suffered damages by this extended detention.[8] His additional defenses are that plaintiff's detention must be shown to have been unlawful,[9] which it was not, due to the court order, and that it is proper psychiatric procedure to isolate a patient and prevent her from attempting to leave the hospital.

If the detention and seclusion went beyond that contemplated by the court order, then it became unlawful.[10] The propriety of this method of confinement and seclusion was evaluated by the jury and we do not find that they erred when faced with the additional evidence that, 1) plaintiff obtained a release as soon as she communicated with a lawyer whose legal assistance was authorized under the statute and court order, and 2) threats were made by defendant. She was effectively delayed in asserting her

8 *Dabkowski* v. *Davis* (1961), 364 Mich 429; *Olepa* v. *Mapletoff* (1966), 2 Mich App 734.
9 *Carr* v. *National Discount Corporation* (CA 6, 1949), 172 F2d 899.
10 *Mezullo* v. *Maletz* (1954), 331 Mass 233 (118 NE2d 356).

legal rights[11] by the extensive restrictions placed upon her by defendant during her temporary detention in a private hospital, and we agree with the jury that such treatment of plaintiff without her consent was unnecessary, was a deprivation of her legal right to contact persons who could represent her rights, and caused her to suffer damages. The court, by its order, certainly did not intend that she be prevented from such communications until her sanity hearing. The isolation technique as a proper psychiatric tool may be unquestioned in cases where it is shown to be necessary and not violative of inherent legal rights.

## Assault and Battery

Defendant states that any touching of plaintiff without her consent was, at best, nominal and necessary under his duty to care for her, that by her acts she submitted to the authority of the court and thus that the damages of $30,000 (or $40,000) were far in excess of that warranted by the evidence. The acts of defendant considered by the jury apparently referred to her seizure at her home and with the forcible application of medication at Ardmore Acres to her unwilling body on his orders. As above, we determine that there was no authority given the defendant to treat plaintiff by reason of the court order or by her husband's consent,[12] as she was competent

---

[11] *Leisure* v. *Hicks* (1953), 336 Mich 148.

[12] *Maben* v. *Rankin, supra.* Defendant often cites this case in support of a number of his assertions, but recognizes that the California statutes differ, as do the facts, from our problem here. California statutes provided for what could amount to 90 days hospitalization without a court order upon the certificate of one doctor. No certificate was necessary for the treatment which may ensue, subject to the statutory liability of the doctor for any negligence in that treatment. The patient was also permitted by statute to contact others and inform them of his detention. The detention had to cease after 90 days unless the patient wished to remain, or unless the court then issued an order continuing the detention or

to act for herself, and that in the absence of such authority, defendant must show that the treatments were necessary. The sanctity of one's body is such that a possible absence of pain and suffering in its unwarranted and nonconsensual touching does not eliminate the need for protection from, or compensation for, such touching in the absence of a court order or an emergency. Any submission by plaintiff, no matter how benign, was not voluntary. It was not necessary that she violently resist at every juncture as a prerequisite to recovery for assault and battery if her lack of consent was clearly manifested.

### Damages

The award of $40,000, reduced by *remittitur* to $30,000, was made by the jury with the likelihood that when all the acts of the defendant were taken together, that amount would adequately compensate plaintiff for the various intangible affronts to her well-being. In the absence of a showing of passion, prejudice or bias of the jury, the award does not shock our judicial conscience.[13] Sufficient proof of various unauthorized actions resulting in grievous damages to the plaintiff by the defendant exists to support the substantial award against him.[14]

Thus, we are at a loss to discern the reason for the $10,000 *remittitur* by the trial court. It is an abuse of discretion where the evidence was supported by the proofs, the verdict was not against the great weight of the evidence, and there was no showing

---

unless a relative or friend obtained two doctors' certificates in support of continued detention. Any California statute in any way similar to our temporary detention statute was not before the *Maben* court. See West's Annotated California Codes, Welfare and Institutions, §§ 5750, 5750.1–5750.3 [repealed 1965, see §§ 6030–6033], 5751 [renumbered § 6250], 5752 [renumbered § 6251].

[13] *Morgan* v. *Engles* (1968), 13 Mich App 656, citing 22 Am Jur 2d, Damages, § 366, pp 472, 473.

[14] *Reardon* v. *Buck* (1952), 335 Mich 318.

of improper methods, prejudice, or bias by the jury.[15] No authority is provided by defendant or the trial court showing why the verdict of $40,000 was excessive when $30,000 is not, and so we must find that the function of the jury to return fair and adequate verdicts should not have been disturbed here. Accordingly, we set aside the *remittitur* and reinstate the jury's original verdict.

A review of the instructions at the behest of the defendant reveals no reversible error. We have seen that the duty of the defendant was to provide only that treatment necessary and that plaintiff's competency to consent or not to consent is relevant to the jury's evaluation of the treatment given by a physician who is employed by the patient's husband. Indeed, no prejudicial error has been shown in the instructions.

Affirmed and verdict reinstated in conformance with this opinion. Costs to plaintiff and cross-appellant.

LEVIN, J., did not participate by reason of GCR 1963, 405.3(3).

T. M. BURNS, J., concurred.

---

[15] *Stevens* v. *Edward C. Levy Company* (1965), 376 Mich 1; *Majewski* v. *Nowicki* (1961), 364 Mich 698.