Chaim **PATRICH**, Plaintiff-Appellant,

v.

**MENORAH MEDICAL CENTER**, Sigmund Gundle, Gustave Eisemann, Marvin Kahn, Defendants-Respondents.

No. WD32439.

Missouri Court of Appeals,
Western District.

June 15, 1982.

Michael Hufft, Next Friend and Atty., James L. Muller, Legal Aid of Western, Missouri, Kansas City, for plaintiff-appellant.

Thomas G. Kokoruda, Christopher K. Kay, Kansas City, for respondent Menorah Medical Center.

Thomas R. Larson, Morris, Larson, King, Stamper & Bold, Kansas City, for respondents Eisemann and Kahn.

William H. Woodson, Spencer, Fane, Britt & Browne, Kansas City, for respondent Gundle.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Plaintiff appeals from the trial court's order and judgment directing a verdict at the close of the plaintiff's evidence. All defendants filed separate motions for the directed verdict.

The sole issue presented is the sufficiency of the plaintiff's evidence to constitute a submissible case for the jury of either assault and battery or false imprisonment.

The plaintiff originally filed his petition pro se which, although not included in the record, is asserted to have been a petition sounding in medical malpractice. On September 15, 1980, some two years after the filing of the original petition, the case reached the trial court's docket for trial. The plaintiff was still acting pro se. The court, having received a suggestion that the plaintiff was incapable of caring for his own interests in the litigation, appointed Mr. Michael Hufft of Legal Aid of Western Missouri as next friend and reset the case for trial December 8, 1980. There were apparently other proceedings culminating in the filing of the plaintiff's third amended petition on the day of trial, December 8, 1980. Despite the lateness of that filing, defendants did not seek a continuance but expressly waived the right to claim one, and the matter proceeded to trial.

The evidence offered suggests the following statement giving the plaintiff the benefit of all favorable evidence and disregarding evidence unfavorable to his submission. On August 27, 1976, the plaintiff was admitted in a comatose condition to the intensive care unit of Menorah Medical Center with a diagnosis of probable self-administered drug overdose. The plaintiff was first placed in intensive care because of his comatose condition. The plaintiff had been found in his apartment when the police were called because of the concern of a friend. The police, having broken the door down, discovered the plaintiff in his apartment. The plaintiff had no known family and was treated immediately for his drug overdose. Although the physicians did not know what had been ingested, by a variety of tests, they were able to determine what was necessary in the way of treatment. In a matter of 48 hours or so, they had succeeded in detoxifying the plaintiff. Because of his condition, a catheter was inserted and various antibiotics were prescribed, apparently for an infection incident to a lack of urinary capacity induced by his comatose condition and dehydration. When the plaintiff recovered and was capable of talking, it became apparent to the physicians, as the record of the hospital discloses, that the plaintiff was suffering from mental illness. The final diagnosis offered in evidence by the plaintiff was psychotic depression, schizoid personality severe. The plaintiff was angry, hostile, uncooperative, and argumentative with the staff and almost wholly uncommunicative with the physicians. The plaintiff testified that he had been treated in Menorah hospital on

two previous occasions for mental illness. These occasions were in 1957 and 1972. The plaintiff's testimony with respect to the events that occurred in the hospital was at best disjointed, was unresponsive to the questions and demonstrated some degree of irrationality. Taken in its most favorable light to the plaintiff, the plaintiff claims that subsequent to his recovery from his comatose state, he was forcibly removed from intensive care and transported to the facility for the treatment of the mentally ill at Menorah hospital. He likewise asserts that he was forcibly injected on several occasions. The nurse's notes indicate that on a couple of occasions the injections were given with "firmness." It is assumed for the purpose of this opinion that the physicians utilized some degree of force in restraining the plaintiff and transporting him to the mental ward, and it is likewise assumed that some of the injections were forcibly administered. There is no basis nor any claim that the force utilized was in excess of only that necessary to reasonably control the plaintiff and to administer the medication. For the purposes of decision in this case, it must be assumed that there was a battery and a restraint of plaintiff. It is unnecessary to make any further review of the lengthy citations to assault and battery and false imprisonment law contained in the plaintiff's brief. The question in this case does not pose a determination of whether the plaintiff was subject to a battery or restraint. The question in the case is the qualified privilege of physicians to undertake the actions which they did in the treatment of the plaintiff.

The determination of that issue hinges upon the actions taken by the hospital when the mental condition of the plaintiff became apparent. It is to be noted that the plaintiff does not contend that his original admission and original treatment, involving as it did conscious restraint of his liberty and assorted batteries represented by the emergency treatment afforded him was in any wise actionable. The plaintiff concedes that his original admission to the hospital and the necessary treatment was privileged.

After that initial treatment and on August 31, Dr. Moss, the Superintendent of Menorah Medical Center, and the Associate Director of Menorah Medical Center executed a form apparently provided by the Division of Mental Diseases of the State of Missouri. Dr. Moss signed as the physician in charge of Menorah hospital. On that same day, a medical certificate in the form prescribed by the Division of Mental Diseases of the Department of Health & Welfare was executed by two of the treating physicians. A summary of that form executed by the physicians recited the circumstances of the patient and stated the physicians' opinion that the plaintiff was mentally ill and likely to injure himself or others if not immediately restrained. These forms were executed the day following the plaintiff's transfer to the psychiatric ward of Menorah. On September 3, 1976, four days after the plaintiff's admission to the psychiatric ward, Dr. Gundle wrote to the Probate Judge of Jackson County, Missouri, notifying the court of the plaintiff's admission to the mental ward. On September 9, 1976, the plaintiff was taken to Western Missouri Mental Health Center, a facility of the State of Missouri for the treatment of the mentally ill. The records of that institution reflect that the plaintiff's admission there was as a result of a commitment order of the Probate Court of Jackson County. These proceedings in 1976 were governed by the provisions of Chapter 202 of RSMo 1969 particularly § 202.793 and § 202.800, now repealed. All statutory references will be to RSMo 1969.

Before consideration of the substantive issues, a procedural problem must be addressed.

■ Plaintiff asserts that the trial court erred in considering the medical certificate and the other documents relating to the commitment process in ruling on defendants' motion for directed verdict. Plaintiff offered the medical records of Menorah Medical Center from August 27, 1976, to September 9, 1976. The certificate and other documents were inadvertently omitted from the records introduced into evidence.

The trial court admitted the certificate when the error was discovered. The trial court has sound discretion as to the order of the introduction of evidence. *Wilkins v. Cash Register Service Company*, 518 S.W.2d 736 (Mo.App.1975). Plaintiff does not dispute the authenticity of the certificate, but merely complains about the timing of its introduction into evidence. In reviewing the trial court's action in sustaining a motion for directed verdict, this court accepts as true the evidence and inferences favorable to the plaintiff, rejecting evidence and inferences to the contrary. However, conceded or admitted facts may not be ignored. *Spear v. Heine Meine, Inc.*, 343 S.W.2d 1, 7 (Mo.1961); *Winger v. General American Life Insurance Co.*, 345 S.W.2d 170, 173 (Mo.1961). The trial court properly considered the certificate in ruling on the motion for directed verdict. The failure of the record clerk to properly respond to plaintiff's subpoena by failing to assemble all of the records and the subsequent inadvertent omission of the certificate cannot afford a basis for reversal. The error was discovered by the court and by correcting the record the court was doing no more than correcting the record to show conceded or admitted facts.

The substantive issue in this case is twofold. First, was the detention of the plaintiff on August 30 before commencing the statutory process on August 31 an unlawful detention and, second, were the hospital and physician defendants authorized after August 31 to undertake the treatment of plaintiff without his consent?

On the issue of false imprisonment, plaintiff asserts that he was confined under § 202.803, which reads as follows:

202.803. Temporary confinement without medical certification—emergency procedure.—

1. Any health or police officer may take an individual into custody, apply to a hospital for his admission and transport him thereto for temporary confinement if such officer has reason to believe that

(1) The individual is mentally ill, or is a mentally retarded person at least seventeen years of age and not under the jurisdiction of a juvenile court, and, because of his mental condition, is likely to injure himself or others if allowed to be at liberty pending examination and certification by a licensed physician; or

(2) The individual, who has been certified under section 202.800 as likely to injure himself or others, cannot be allowed to remain at liberty pending the endorsement of the certificate as provided in that section.

2. The application for admission shall state the circumstances under which the individual was taken into custody and the reason for the officer's belief.

Plaintiff argues that the defendants did not follow § 202.803, because they were not "health officers" within the meaning of the statute. He claims that the statute refers to the "health officers" appointed by the county courts under §§ 192.260–192.280 RSMo 1969, but cites no authority for his view. Those provisions of Chapter 192 authorize the county courts of this state to appoint health officers to enforce the rules and regulations of the division of health. Section 192.260 specifically states that the county courts are not required to appoint a health officer. Sections 192.260–192.280 make no reference to the involuntary commitment procedure. Alternatively, the plaintiff argues that even if the defendants were protected by the statute after August 31 when the papers were filed, the confinement of August 30 could not be justified under the statute.

It is unnecessary to reach or decide the issue of statutory construction. The first branch of the argument misconceives the process followed. The documents in the record were in substantial compliance with the requirements of § 202.800 [repealed] which provided for temporary confinement on medical certification. Section 202.803 [repealed] is not involved in this case. The second branch of the argument ignores a fundamental principle of the common law with respect to the issue of restraint of persons like the plaintiff.

■ "The essence of the wrong of false imprisonment is the confinement, without legal justification, by the wrongdoer of the person wronged." *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo.1969).

At common law, a private person could, under some circumstances, legally restrain one believed to be mentally ill. *Keleher v. Putnam*, 60 N.H. 30 (1880); "It is well established that an insane person, without any adjudication, may lawfully be restrained of his liberty for his own benefit, either because it is necessary to protect him against a tendency to suicide, or to stray away from those who would care for him, or to protect others from his assaults, or other depredations, or because medical attention requires it." *Bisgaard v. Duvall*, 169 Iowa 711, 151 N.W. 1051, 1054 (1915). Missouri recognizes that common law principle based on necessity. *In re Moynihan*, 332 Mo. 1022, 62 S.W.2d 410, 418 (1933). Such restraint, however, is not authorized unless "it is necessary to prevent some immediate injury by the lunatic to himself or others." 44 C.J.S. Insane Persons, p. 161.

The New York Supreme Court, in *Emmerich v. Thorley*, 35 A.D. 452, 54 N.Y.S. 791 (1898), affirmed the lower court's judgment of nonsuit in the plaintiff's action for false imprisonment against the defendants, plaintiff's sister and brother-in-law. The court stated that the defendants "were obliged to show that such circumstances existed as authorized them to apply restraint" to justify their conduct and relieve them from legal responsibility. The court found that the plaintiff's condition justified the defendants' actions in restraining her and that it was the defendants' duty to then institute proceedings to authorize the plaintiff's further detention. The evidence showed that the defendants had done so and the court affirmed the judgment of nonsuit, finding that "there was nothing to go to the jury."

In the instant case, the trial court directed a verdict in favor of defendants at the close of plaintiff's evidence. Although it was the defendants' burden to show that the plaintiff's restraint was justified, the plaintiff's own evidence may prove such justification.

The Missouri Court of Appeals, in *Epperson v. Elliott*, 215 Mo.App. 123, 242 S.W. 1012 (1922), held that the trial court erred in not directing a verdict for the defendant on plaintiff's action for the wrongful killing of her husband. Although it was the defendant's burden to prove that the act was justified, the court held that the plaintiff's own testimony proved justification. More recently, in *Overfield v. Garner*, 595 S.W.2d 446 (Mo.App.1980), the court affirmed the trial court's order directing a verdict for the defendant at the close of plaintiff's evidence on plaintiff's suit on a contract. The court held that the plaintiff's own evidence established the validity of the defendant's affirmative defense that the contract was void because of the statute of frauds. The court held, "It is not error for a trial court to direct a verdict for a defendant when the plaintiff's evidence establishes recovery is barred by an affirmative defense such as bankruptcy, contributory negligence, the statute of limitations or the statute of frauds." *Overfield, supra* at 447. The trial court had authority to direct a verdict for the defendants if plaintiff's own evidence proved that the defendants were justified in restraining the plaintiff. The plaintiff's evidence was all to the effect that plaintiff was a mentally ill person. The plaintiff, at trial, denied that he had attempted suicide, asserting that his ingestion of the medication was accidental. The record, however, demonstrates that at the time the physicians were making a judgment with respect to the treatment of the plaintiff the plaintiff refused to talk to them and did not even tell them what medicine had been ingested. Under those circumstances and viewing it from the standpoint of the physicians' knowledge at the time their medical judgments were made, the record supports only the inference drawn by the doctors— that the plaintiff had attempted suicide. His subsequent comments contained in the hospital record also support that inference. The plaintiff refused nourishment and medical assistance intended to alleviate dangers of death from urinary failure. The

conclusion, stated by the physicians, that plaintiff was likely to cause injury to himself, is inescapable.

■ On this record, there is no evidence to support a submission of false imprisonment. The detention of plaintiff for less than 24 hours before proceedings were commenced under § 202.800 [repealed] was fully justified upon common law principle and the evidence submitted by plaintiff himself. The detention thereafter was pursuant to the statutes then in effect, and there was no delay or lapse by the defendants in bringing the plaintiff to the attention of the proper authorities. Plaintiff makes no claim that his ultimate commitment was in any wise irregular under the then existent statutes.

With respect to the claim of assault and battery based on the forcible treatment, the plaintiff misconceives the scope of § 202.-793 [repealed] which reads:

202.793. Admittance of involuntary patients.—The head of a private or public hospital, subject to the availability of suitable accommodations, may receive therein for observation, diagnosis, care, and treatment any individual whose admission is applied for under any of the following procedures:

(1) Hospitalization on court order, judicial procedure;

(2) Hospitalization on medical certification, emergency procedure;

(3) Hospitalization without endorsement or medical certification, emergency procedure.

Plaintiff was admitted properly under § 202.800 [repealed] which is the procedure described in (2) of § 202.793 "hospitalization on medical certification, emergency procedure." Thus, under the then statutes, the hospital, its employees, and physicians were authorized not only to receive and detain the plaintiff but also to afford him treatment.

The medication which was prescribed and given was an antibiotic. There is no claim by the plaintiff that there was a nonconsensual administration of any of the so called mind altering drugs. The record of the hospital, placed in evidence by the plaintiff, is replete with evidence that the antibiotics prescribed were necessary to maintain the physical health of the patient.

It is but simple common sense to say that when a statute authorizes the treatment of a person confined by reason of mental disorder that the treating physicians may by reasonable means administer life supportive medications without the "consent" of the patient. No medications were given to plaintiff except voluntarily until after his admission to the hospital under the emergency procedure.

■ The plaintiff has cited many cases involving the administration of treatment or the performance of an operation by a physician without the express or implied consent of the patient. In the context of the instant case, it is unnecessary to discuss those cases, turning as they do upon principles of medical malpractice. There is no claim in this case that any actions of the doctors, the hospital, or its employees were negligent or in any manner caused the plaintiff to suffer a physical injury. Nor is the plaintiff's citation of cases where a person has refused consent and treatment is undertaken without court order helpful. After the August 31 certification, the doctors were authorized by § 200.793 [repealed] to treat the plaintiff. The real question is the extent of treatment which the statute authorizes once a patient has been certified in accordance with the statutes then in effect. The root issue there is the construction of the word, "treatment." In the context of the statutes, the instant case does not require that the issue of treatment by mind altering drugs or other medications which might have had harmful side effects be considered. The only medications involved in this case were antibiotics to remedy a serious physical ailment caused by the plaintiff's ingestion of the drug overdose which resulted in near urinary failure. The language of a statute is to be given its plain and ordinary meaning, *State v. Brady*, 472 S.W.2d 356 (Mo.1971), to accomplish the purposes for which the statute was enacted. The statutes that are being considered were enacted for the protection of those suffering from mental illness. The word "treatment" in its ordinary and accepted sense

certainly includes those measures necessary for the physical well being of the patient. It would be anomalous to say that the statute authorized the restraint of a patient and did not authorize those obvious procedures necessary to save his life or to prevent him from suffering serious physical illness. The plaintiff has cited cases from other jurisdictions construing the statutes of those states. Principal reliance is placed on *Stowers v. Ardmore Acres Hospital,* 19 Mich.App. 115, 172 N.W.2d 497, 503 (1969), *aff'd, Stowers v. Wolodzko,* 386 Mich. 119, 191 N.W.2d 355, 365 (1971). The opinion in *Stowers* discloses that the Michigan statute there in question did not authorize treatment, and the case is of little authority in construing the Missouri statute which expressly authorizes treatment.

The trial court properly directed a verdict against the plaintiff on the issue of assault and battery. Under all the evidence, the actions of the defendants were authorized by the necessity of the situation and the then applicable statutes.

The judgment of the trial court is affirmed.

All concur.