CITY FINANCE COMPANY v KLOOSTRA

1. HUSBAND AND WIFE—JOINT LIABILITY—PROMISSORY NOTES—CONSIDERATION.

A married woman is jointly liable if she co-signs a promissory note with her husband; judgment entered on the note may be satisfied only out of property held jointly with her husband, and the wife's separate estate is not liable unless consideration for the note passed directly to her separate estate (MCLA 557.52–557.54).

2. HUSBAND AND WIFE—DISABILITY OF COVERTURE—CONSTITUTIONAL CONVENTION.

Delegates to the Constitutional Convention who supported the provision abolishing the disabilities of coverture and providing for the rights of wives in their separate property had no intention of making married women jointly and severally liable on joint obligations with their husbands (Const 1963, Art 10, § 1).

3. HUSBAND AND WIFE—MARRIED WOMEN'S PROPERTY ACT—DISABILITY OF COVERTURE.

The married women's property act is still the law of Michigan and is not superseded by the constitutional provision which abolishes the disabilities of coverture; the trial court erred in refusing to limit execution on a plaintiff's judgment in a case where a married woman co-signed a promissory note with her husband to the defendant woman's interest in property previously owned jointly by her and her husband (Const 1963, Art 10, § 1; MCLA 557.52–557.54).

Appeal from Kent, Roman J. Snow, J. Submitted Division 3 March 8, 1973, at Grand Rapids. (Docket No. 13590.) Decided May 23, 1973.

Complaint in district court by City Finance Com-

REFERENCES FOR POINTS IN HEADNOTES
[1] 41 Am Jur 2d, Husband and Wife §§ 145–147, 220, 223.
[2, 3] 41 Am Jur 2d, Husband and Wife §§ 16–20, 34.

pany against Pat Kloostra to recover the balance due on a promissory note. Summary judgment for plaintiff. Defendant appealed to circuit court. Affirmed. Defendant appeals. Reversed and remanded.

*Mohney, Goodrich & Titta, P. C.* (by *Robert V. Dugan),* for plaintiff.

Kent County Legal Aid Society (by *Joel S. Whetstone),* for defendant.

Before: R. B. BURNS, P. J., and T. M. BURNS and PETERSON,\* JJ.

R. B. BURNS, P. J. On August 18, 1969, defendant and her husband, Harold J. Kloostra, co-signed a promissory note payable to plaintiff's predecessor. That note evidenced a loan of $472.24 by the latter to the former. At the time she signed the note defendant had no separate estate. An automobile was purchased with the proceeds of the loan. On November 6, 1970, defendant and Harold were divorced. As of January 18, 1971, there was a balance due on the loan of $400.12. By this time Harold had departed for parts unknown—taking with him the automobile purchased with the proceeds of the loan of August 18, 1969. Suit was filed against defendant.

Defendant admitted the loan. However, she claimed that any judgment must limit execution to her interest in property previously owned jointly by her and Harold. Defendant relied on MCLA 557.52; MSA 26.182, thru MCLA 557.54; MSA 26.184. The district court judge held that those statutes relied upon by defendant had been superseded by Const 1963, art 10, § 1. Accordingly, he

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

entered summary judgment for plaintiff with no
limitations on execution. Defendant appealed. The
circuit court affirmed. This Court denied leave to
appeal. The Supreme Court remanded to this
Court for consideration on the merits. 387 Mich
811 (1972).

The married women's property act[1] provides in
part:

"Hereafter married women shall be possessed of the
power and capacity, and it shall be competent for them
to bind and makes [make] themselves jointly liable with
their husbands upon any written instrument as herein-
after provided. *Said liability to extend, however,* only to
the *property described in the following section."* (Em-
phasis added.) 1917 PA 158, § 2, as amended by 1929
PA 287; MCLA 557.52; MSA 26.182.

"Hereafter the real estate of the husband and wife
owned by them as tenants by entirety, or the real
estate acquired by either as survivor of the other, or in
the event of divorce the interest of either in real estate
which was previously owned by them as tenants by the
entirety, shall be liable to seizure and sale on execution,
and all personal property and choses in action owned
by husband and wife jointly with right of survivorship
therein, shall be subject to writ of garnishment and all
other process provided by law, in satisfaction of any
judgment which has been recovered against the persons
who were at the time of the execution of such written
instrument husband and wife jointly or the survivor
upon any instrument signed by both. *In case the wife is
the survivor, or in case the husband and wife have been
divorced prior to the recovery of the judgment, a judg-
ment against the wife may be satisfied only out of such
property."* (Emphasis added.) 1917 PA 158, § 3, as
amended by 1929 PA 287; MCLA 557.53; MSA 26.183.

"Such judgment or decree shall be enforced in all
respects as now provided by law, except this, that in all
cases where such liability is sought to be enforced as

[1] Three statutes have come to be collectively called the married
women's property act: 1855 PA 168; 1911 PA 196; and 1917 PA 158.

against the real estate of the husband and wife owned by them jointly as tenants by entirety or the crops, rents, profits or proceeds thereof or taken therefrom, or any personal property or choses in action owned by the husband and wife jointly with right of survivorship therein, the judgment or decree shall recite and it shall be the duty of the court to determine in such suit or proceeding whether such judgment or decree is rendered upon any written instrument and whether the parties defendant in such suit or proceeding and against whom such judgment or decree is rendered, were at the date of delivery of such instrument husband and wife, naming them, which recital of fact for the guidance of the officer shall be endorsed upon any writ of execution or other process issued thereon or for the collection thereof, which recital shall be conclusive as against the husband and wife and authorize the enforcement of such judgment or decree as against all property subject to the satisfaction thereof by virtue of this act." 1917 PA 158, § 4, as amended by 1929 PA 287; MCLA 557.54; MSA 26.184.

Const 1963, art 10, § 1, provides:

*"The disabilities of coverture as to property are abolished.* The real and personal estate of every woman acquired before marriage and all real and personal property to which she may afterwards become entitled shall be and remain the estate and property of such woman, and shall not be liable for the debts, obligations or engagements of her husband, and may be dealt with and disposed of by her as if she were unmarried. Dower may be relinquished or conveyed as provided by law." (Emphasis added.)

Plaintiff claims that the limited liability sought by defendant and obviously authorized by 1917 PA 158 is one of those "disabilities of coverture as to property" abolished by our 1963 constitution. Defendant responds that the framers of the new constitution had no intention of altering the married women's property act; that the limited liabil-

ity she seeks is not a disability but a protection; and that, if a disability of coverture is involved, it is not a disability "as to property".

## I.

Both parties cite to us decisions which they claim are dispositive of the instant case:

Plaintiff cites *Detroit Newspaper Industrial Credit Union v McDonald,* 9 Mich App 146 (1967). In that case a panel of this Court did state that our 1963 constitution abolishes the limited liability sought by defendant herein. However, that statement was dictum, and was expressly recognized as such by its author. The Court denied Mrs. McDonald limited liability because of an established exception to 1917 PA 158. Thus, it was unnecessary and unwise for the Court to consider the effect of the new constitution on the act. Since neither party had raised the issue of apparent conflict between the constitution and the act, the Court did not have the benefit of briefs or argument on the issue.

Defendant cites *Yedinak v Yedinak,* 383 Mich 409 (1970), and *Stowers v Wolodzko,* 19 Mich App 115 (1969), and concludes therefrom: "Thus, the courts in *Yedinak* and *Stowers* have both referred to the married women's property act as if it, rather than the constitution, governs" the making of contracts by married women. We think that conclusion is unwarranted. In *Yedinak, supra,* 419, Justice Adams did speak of the "provisions of MCLA 557.53 and 557.54; MSA 26.183 and 26.184", as "possible defenses". However, Justice Adams' opinion in *Yedinak* was a concurrence. Furthermore, the inclusion of MCLA 557.53 and 557.54; MSA 26.183 and 26.184, among possible defenses is hardly a holding that those sections of

the married women's property act have not been superseded by the 1963 constitution. In *Stowers, supra,* 123, fn 6, a panel of this Court did cite MCLA 557.51; MSA 26.181, as authorizing married women to make their own contracts. However, that case had nothing to do with a married woman's contractual liability. In *Stowers* the Court held that a husband cannot compel his wife to accept a doctor-patient relationship.

Defendant also cites as controlling *Traverse City State Bank v Conaway,* 37 Mich App 647 (1972). In that case defendants, husband and wife, co-signed a note in return for a loan from plaintiff bank. The loan was used to operate a business owned by the husband. Defendant wife received no separate consideration and signed as an accommodation to her husband. Subsequent to the execution of the note, but prior to institution of suit by plaintiff, the husband was adjudged bankrupt. The trial court dismissed plaintiff's case against both defendants. This Court reversed on the ground that property owned jointly by husband and wife remains subject to joint judgment even when the husband has been discharged in bankruptcy. The case was remanded with instructions to enter judgment for plaintiff with execution limited to joint property. Defendant herein claims that had 1917 PA 158 been superseded by the 1963 constitution, this Court would not have limited judgment to joint property. However, this Court was never asked to consider the impact of the 1963 constitution on the act. Plaintiff asked for judgment with execution restricted to joint property.

It is our conclusion that no appellate court of this state has ever been asked to consider the impact of the 1963 constitution on the married women's property act. It is tempting to magnify

*Yedinak, Stowers,* and *Conaway,* or *McDonald* into
support for a quick resolution of this case. How-
ever, the issue involved is of considerable signifi-
cance and deserves thorough analysis, not reliance
on dictum.

## II.

Our task is to effectuate the intent of those who
drafted the 1963 constitution. The best index to
that intent is the debate which preceded adoption
of the provision in question. However, we must
first place that debate in perspective by ascertain-
ing the state of the law of coverture prevailing at
the time of the constitutional convention. *Burdick
v Secretary of State,* 373 Mich 578, 584 (1964);
*Holland v Clerk of Garden City,* 299 Mich 465
(1941); *Pfeiffer v Detroit Board of Education,* 118
Mich 560 (1898).

1. The Law of Coverture:

The status of a wife under common law was well
stated in *Burdeno v Amperse,* 14 Mich 90 (1866),
and *Tong v Marvin,* 15 Mich 60 (1866):

> "The effect of marriage was to produce what is called
> in the law books *unity of person;* the husband and wife
> being but one person in the law: Coke upon Littleton,
> 112a, lib 2, chap 10, § 168; 1 Blackstone's Commen-
> taries, p 442. The wife, by her coverture [marriage],
> ceased to have control of her actions or her property,
> which became subject to the control of her husband,
> who alone was entitled, during the marriage, to enjoy
> the possession of her lands, and who became owner of
> her goods and might sue for her demands. The wife
> could neither possess nor manage property in her own
> right, could make no contract of a personal nature
> which would bind her, and could bring no suit in her
> own name. In short, she lost entirely all the legal
> incidents attaching to a person acting in her own right.

The husband alone remained *sui juris,* as fully as before marriage." *Burdeno v Amperse, supra,* 92.

"He [the husband] had (1) The control of her person, and the right to appropriate her earnings to his own use; (2) He became by the marriage the owner of such personal estate as she then possessed, and of all that she should thereafter acquire during coverture; (3) He had a right to reduce her choses in action to possession, and to dispose of her chattel interests in lands to his own use; (4) He became vested with her estate of inheritance during the coverture, and if he survived her, and issue capable of inheriting it had been born to them, he had a life estate therein; and (5) In case of their separation, he had the better right to the control and custody of the children of the marriage." *Tong v Marvin, supra,* 66.

The control which a husband had over the person and property of his wife was so great and so susceptible to abuse that it was long the subject of complaint and of frequent interposition by courts of equity. Finally, legislatures began to remove these "disabilities of coverture". The series of statutes enacted by our Legislature were succinctly summarized in *Sierra v Minnear,* 341 Mich 182, 186–187 (1954):

" '[MCLA 449.6; MSA 20.6], permitting a husband and wife to be partners in business.

" '[MCLA 557.1; MSA 26.161], provides that all property, real and personal, of a married woman, acquired in any manner before or after marriage, shall be hers alone, free of any debts or engagements of her husband, with full rights therein, to make any disposition she wishes, as though she were unmarried.

" '[MCLA 557.2; MSA 26.162], permits any trustee of a married woman's real or personal property to make a direct conveyance of said property to the married woman.

" '[MCLA 557.4; MSA 26.163], provides that as regards her separate estate, a married woman, and not

her husband, may be held liable for any contract she makes thereto.

" '[MCLA 557.11; MSA 26.171], provides that a married woman shall have full and absolute right to have, enjoy and make any disposition of any or all of her earnings.

" '[MCLA 557.51; MSA 26.181], abolishes the common-law disability of married women to make and enter contracts jointly with her husband on jointly-owned property.

" '[MCLA 557.52; MSA 26.182], allows married women to make themselves jointly liable with their husbands on written contracts covering jointly-held property.

" '[MCLA 557.53; MSA 26.183], allows execution and garnishment on joint property of husband and wife on a joint obligation of the two.

" '[MCLA 702.93; MSA 27.3178(163)], provides that on the death of any married woman possessing property not disposed of by her will, the same shall be first subject to her debts, funeral charges and expenses of administration.' "

Although the married women's property act has gone far toward making a wife the equal of her husband, at least in the eyes of the law, it does not abolish all the common-law distinctions between husband and wife. One of the remaining distinctions is at issue herein: if a married man co-signs a promissory note with his wife, he is jointly and severally liable thereon. That means that any judgment entered on the note may be satisfied out of any property held jointly with his wife and also out of any property held by him separately, even though consideration for the note inured solely to the joint estate. On the other hand, if a married woman co-signs a promissory note with her husband, she is jointly liable thereon. That means that judgment entered on the note may be satisfied only out of property held jointly with her husband. The wife's separate estate is not liable, unless

consideration for the note passed directly to her separate estate. *Koengeter v Holzbaugh,* 332 Mich 280 (1952).

This distinction is, in reality, a "disability of coverture", for it exists only because the common law denied married women the capacity to make binding contracts and because our Legislature has not completely abrogated the common law. However, because the same incapacity can be used to avoid personal liability once a contract has been made, it is considered by many to be a "defense of coverture" and as such a protection for married women.

2. The 1961–1962 Constitutional Convention:

Those delegates who spoke in favor of Const 1963, art 10, § 1, offered, between them, three separate reasons for their support. In the instant case each of the separate reasons is inconsistent with an intent to supersede the married women's property act.

The rationales offered to support the provision were the following: (i) Avoid antagonizing a majority of the electorate, which happened to be female; (ii) Protect married women and their children from economic hardship; and (iii) Insert the married women's property act into the new constitution.

i. Electioneering:

Delegate J. Edward Hutchinson, vice-president of the convention, stated the following early in the debates:

"Let me say this: frankly, at one time I was of the opinion that we didn't need to say anything at all about this in the constitution because, certainly, the legislature by statute has gone further than the constitution went, and there is no doubt but what the legislature could provide all of this by statute law. But then—I'll

have to confess this—I became a little apprehensive and fearful lest, if the constitution is silent upon this matter, that not only the lady delegates in this convention would become aroused, but that perhaps a majority of the potential voters of the state, who are women, would become alarmed and not favor the work of this convention when, as a matter of fact, their rights really rest upon statute law and judge made law, and this constitutional provision is more or less declaratory. However, yielding to the political practicalities of the situation and recognizing that from that standpoint we need to say something, at that point I was ambitious to make it as broad as we could possibly make it.

"I think that if we write into the constitution that the disabilities of coverture are abolished, then the rights of a married woman will be the same as the rights of an unmarried woman, and she will be able to do everything with her property that she could do if she were unmarried. At the same time I do not think that her privileges are denied her. By this provision she will gain all her rights and will not lose any of her special privileges." 2 Official Record, Constitutional Convention 1961, p 2438.

Delegates Austin, Martin, and Gover expressed similar reasons for their votes in support of the provision. 2 Official Record, Constitutional Convention 1961, pp 2442, 2443.

We doubt that delegates who were merely electioneering intended to significantly alter the married women's property act. Furthermore, Delegate Hutchinson's distinction between a married woman's "rights" and her "special privileges" suggests that he differentiated between the "disabilities of coverture" and the "defense of coverture." Accordingly, the same political considerations which motivated a declaration of married women's rights would also require a preservation of what many perceived to be married women's special privileges. A constitution which abolished those privileges

would probably have been unsatisfactory to many of the same voters Hutchinson hoped to convince to support the constitution.

ii. Protection:

Delegate Ann Donnelly, a cosponsor of Committee Proposal 63, which proposal became Const 1963, art 10, § 1, offered the following reason for the proposal:

"Now, we may laughingly talk about the fact that it [marriage] is a partnership, but in many instances it is most important for the wife to be able to retain property in her name, for her control. In the long run the married woman, if she does beget children, is the person most primarily interested in protecting their rights. To remove any control from a married woman to protect her rights and her children's rights by knocking this language out and laughingly feeling that we have covered it in another article, I think, is very erroneous." 2 Official Record, Constitutional Convention 1961, p 2440.

Delegate Joseph Snyder concurred:

"I say this with all seriousness: that because of the makeup, the biological makeup of people, women are more trusting, and once the marriage vows are consummated, they are willing to share and share equally, and sometimes give away some of the rights that they have. And if they are not fully protected, there are those who would take advantage of this.

"I feel that this is a very sober matter before us. I feel that we, as delegates, should protect this basic ideological right that we do have, and I certainly would oppose any amendment that would take away from the family something that is so definitely required to perpetuate this at an age where our marriages are so volatile and our family life is so much exposed to the jet age." 2 Official Record, Constitutional Convention 1961, p 2440.

Delegate Catherine Cushman also spoke of the need to protect married women:

"Mr. Chairman and fellow delegates, this is a fine subject for joking, but I think there has been enough joking about it. All joking aside, women still need the protection of this section. Socially and economically, women are still in a disadvantaged position, as any intellectually honest person will acknowledge. Women generally find it more difficult to get higher paid jobs. Statistics show this very clearly. The governor just yesterday signed a bill that provides equal pay for women for equal work. The fact that only 11 out of 144 delegates in this convention are women indicates that they are at a disadvantage politically as well. Our social attitudes change, very clearly. This is not to say that women are not building a better position for themselves in this world; but at the present time they are in a disadvantaged position. The common law provides for a disadvantaged position for women, and there is no doubt in my mind that they need this type of protection. Thank you." 2 Official Record, Constitutional Convention 1961, p 2443.

The "defense of coverture" which insulates a married woman's separate estate from the debts of marriage seems to be just the type of "protection" the quoted delegates were attempting to provide. If a husband dies, becomes incapacitated, or abandons his family responsibilities, his wife and children are more secure if the wife's separate estate, at least wages, is completely available to meet current expenses. Thus, it is our opinion that those delegates who supported the provision at issue herein had no intention of making married women jointly and severally liable on joint obligations with their husbands.

iii. Constitutionalization of the married women's property act.

Delegate Herman Dehnke, a retired circuit judge, offered the following explanation for his vote:

"Mr. Chairman and fellow delegates, just a few words with reference to the fears that have been expressed that this provision may be considered as a limitation on the power of the legislature. As has been mentioned by other speakers, the statute has gone beyond what our present constitution contains. That has been construed as a floor, and not a ceiling. There isn't anything here whatever to suggest that this proposed amendment will be construed in any other way. It will be construed as a floor, as a limitation below which the legislature cannot go without any restriction on how much farther it may go in promoting the purpose of the entire amendment.

"On the other hand, I do not agree that it is advisable to go back to the old proviso. The 1908 constitution, and perhaps others before it, established a floor beyond which the legislature has gone. We are merely raising the floor by what we are putting in here, and the legislature can build from there on." 2 Official Record, Constitutional Convention 1961, p 2443.

If it was the intent of the delegates to abolish all distinctions historically traceable to coverture, it made no sense to speak of "a floor" below which the Legislature could not go and of "promoting the purpose of the entire amendment". If all distinctions are abolished, the Legislature has no discretion. Judge Dehnke's remarks made sense only if he distinguished between the "disabilities of coverture" and the "defense of coverture." If he made such a distinction, the "floor" becomes a prohibition on the reimposition of the "disabilities of coverture" and a guarantee of minimum protections.

The married women's property act is still the law of this state. The trial court erred in refusing to limit execution on plaintiff's judgment to defendant's interest in property previously owned jointly by her and her husband.

Reversed and remanded for proceedings consistent with this opinion. Costs to defendant.

All concurred.