MICHIGAN NATIONAL LEASING CORPORATION v CARDILLO

Docket No. 46782. Submitted November 5, 1980, at Detroit.—Decided February 3, 1981. Leave to appeal applied for.

Plaintiff, Michigan National Leasing Corporation, leased a cement mixer to Cardillo Equipment Company, Inc., under a written lease guaranteed by its president and his wife, Frank and Shirley Cardillo. Plaintiff filed suit in the Oakland Circuit Court against Cardillo Equipment and Frank and Shirley Cardillo, jointly and severally, alleging breach of the lease, the guaranty, and damages. Shirley Cardillo, at the close of plaintiff's case, asserted that the guaranty was void because of coverture. Defendants rested without submitting any proofs. The court, Richard D. Kuhn, J., granted judgment for plaintiff against defendants with the judgment against Shirley Cardillo being joint with her husband, not several. The court also denied a request by plaintiff, based upon a provision of the lease, for recovery of attorney fees. Shirley Cardillo appeals and plaintiff cross-appeals. *Held:*

1. The Constitution has abrogated the doctrine of coverture in Michigan (Const 1963, art 10, § 1). Shirley Cardillo's liability on the judgment is joint and several with the other defendants.

2. Attorney fees may be awarded in an action based on contract where the parties have contractually stipulated for reasonable attorney fees. The court erred in not allowing plaintiff to offer proof of the fair value of its attorney's services.

Affirmed in part, reversed in part, and remanded.

1. CONSTITUTIONAL LAW — JUDICIAL CONSTRUCTION — STATUTES.

Technical rules of statutory construction do not apply to the construction of a constitution.

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d (Rev), Constitutional Law § 96.
[2] 16 Am Jur 2d (Rev), Constitutional Law § 99.
[3] 16A Am Jur 2d, Constitutional Law § 705.
[4] 20 Am Jur 2d, Costs §§ 72, 73, 78.

Amount of attorneys' compensation in absence of contract or statute fixing amount. 57 ALR3d 475.

Validity and effect of contract for attorney's fees made after inception of attorney-client relationship. 13 ALR3d 701.

2. CONSTITUTIONAL LAW — JUDICIAL CONSTRUCTION.
    The primary rule of construction of a constitution is the rule of
    "common understanding" and the interpretation that should be
    given it is that which reasonable minds, the great mass of the
    people themselves, would give it, as the intent to be arrived at
    is that of the people who ratified it.

3. CONSTITUTIONAL LAW — COVERTURE.
    The Constitution has abrogated the doctrine of coverture in
    Michigan (Const 1963, art 10, § 1).

4. CONTRACTS — ATTORNEY FEES.
    Attorney fees may be awarded in an action based on contract
    where the parties have contractually stipulated for reasonable
    attorney fees; the award must be measured by the fair value of
    the services rendered.

*Hammond, Ziegelman, Sotiroff & Allen* (by *Dennis M. Rauss*), for plaintiff.

*Austin D. Perrotta*, for defendant.

Before: M. F. CAVANAGH, P.J., and D. F. WALSH and D. C. RILEY, JJ.

D. C. RILEY, J. The primary issue on appeal is whether the common law principle of coverture remains a viable defense in Michigan. A resolution of this issue necessitates a reconsideration of a decision rendered by another panel of this Court in *City Finance Co v Kloostra*, 47 Mich App 276; 209 NW2d 498 (1973).

On June 28, 1977, plaintiff, a corporation engaged primarily in the business of leasing construction equipment, filed a complaint in Oakland County Circuit Court against Cardillo Equipment Company, Inc., a corporation engaged in cement contracting, and against its president, Frank Cardillo, and his wife, Shirley Cardillo, jointly and severally. Plaintiff sought recovery of damages for breach of a lease of a cement mixer entered into

by Cardillo Equipment Company and breach of a personal guaranty executed by Frank and Shirley Cardillo.

During the ensuing bench trial, plaintiff offered proof of defendant's breach of the lease and guaranty and the resulting damages. At the close of plaintiff's case, defendant Shirley Cardillo asserted that the guaranty was void because of the doctrine of coverture. MCL 557.1 *et seq.;* MSA 26.161 *et seq.* Defendants then rested their case without submitting any proofs.

The trial court held that defendants had breached their lease and guaranty with plaintiff and consequently were liable to plaintiff for damages in the amount of $47,699.63, judgment interest of $5,008.35, and allowable costs. The judgment against defendant Shirley Cardillo was joint with her husband, not several, as the trial judge sustained the coverture defense asserted. In addition, the trial court denied plaintiff's request, premised upon a provision in the lease, for recovery of attorney fees. After post-trial motions for reconsideration of both the coverture defense and plaintiff's request for attorney fees were denied, a judgment was entered on July 31, 1979. Defendant Shirley Cardillo has appealed as of right regarding the coverture issue and plaintiff has filed a cross-appeal claiming that the trial court's denial of attorney fees was erroneous.

The delegates to the 1961-1962 Constitutional Convention, after lengthy debate, finally added the following amendment to the Michigan Constitution.

"Sec. 1. *The disabilities of coverture as to property are abolished.* The real and personal estate of every woman acquired before marriage and all real and personal property to which she may afterwards become

entitled shall be and remain the estate and property of such woman, and shall not be liable for the debts, obligations or engagements of her husband, and may be dealt with and disposed of by her as if she were unmarried. Dower may be relinquished or conveyed as provided by law." (Emphasis added.) Const 1963, art 10, § 1.

The issue of the effect of this provision on the common law disabilities of coverture that limit the capacity of married women to contract was first mentioned in *Detroit Newspaper Industrial Credit Union v McDonald,* 9 Mich App 146; 156 NW2d 62 (1967). The *Detroit Newspaper* Court affirmed the trial court's holding that because a married woman had received some consideration from the sale of an automobile, a promissory note she jointly executed with her husband was enforceable against her. Although clearly dictum, since the *Detroit Newspaper* parties did not raise on appeal the implications of Const 1963, art 10, § 1, on the common law disabilities of coverture, the Court noted in passing that based on the constitutional provision alone it would have come to the same conclusion. According to the *Detroit Newspaper* Court, the constitutional provision served to completely abrogate the doctrine of coverture, whereas, the married women's property act had only partially abolished the doctrine.

The issue was squarely addressed in *City Finance v Kloostra, supra,* wherein suit was maintained by a finance company against a married woman who had cosigned a note with her husband to purchase an automobile. Four payments on the note had been completed when the couple was divorced and the husband departed with the car. The finance company commenced suit against the wife, who sought to defend on the ground that

consideration did not pass to her separate estate and, as a consequence, the judgment should be satisfied only from the property owned jointly by the couple.

The trial court held that article 10, § 1, of the 1963 Constitution had superseded the married women's property act so that Mrs. Kloostra was individually liable on the note. On appeal, this Court rejected the trial court's constitutional analysis and held that the common law defense of coverture, as embodied in the married women's property act, is still available to a married woman as a defense to individual liability on a contract in the absence of consideration passing directly to her separate estate.

The Court reached this conclusion primarily on two grounds. First, by delving deeply into the record of the 1961-1962 Constitutional Convention, the Court determined that the reasons set forth by the supporters of the constitutional provision were "inconsistent with an intent [that it] supersede the married women's property act". *Kloostra, supra,* 285. Second, the *Kloostra* Court held that, although the *disabilities* of coverture were abolished by the 1963 Constitution, article 10, § 1, the *defense* of coverture survived. *Kloostra, supra,* 288-289.

We begin our analysis by discussing the rules of construction to be applied in construing the constitutional provision in issue. Citing the historical case of *McCulloch v Maryland,* 17 US (4 Wheat) 316, 407; 4 L Ed 579 (1819), our Supreme Court in *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971), noted that, in interpreting a constitution, "the technical rules of statutory construction do not apply". The reason for this is the fundamental difference between

constitutions and statutes. The Court elaborated upon this difference by quoting Justice Cooley:

"The primary rule is the rule of 'common understanding' described by Justice Cooley:
" 'A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* "For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, *the intent to be arrived at is that of the people,* and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument in the belief that that was the sense designed to be conveyed." (Cooley's Const Lim 81).' (Emphasis added.)" *Traverse City School Dist, supra.*

Relying again on Justice Cooley's treatise on constitutional law, the Supreme Court in *People v Board of State Canvassers,* 323 Mich 523, 529; 35 NW2d 669 (1949), cited the following rule of construction with approval.

"The other principle is that the *first resort,* in all cases where a constitutional provision is to be interpreted, *is to the natural signification of the words employed* in the order and grammatical arrangement in which the framers of the instrument have placed them; and, if thus regarded, the words used convey a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then the meaning apparent on the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such cases there is no room for construction. Cooley on Constitutional Limitations (5th ed), pp 69, 70." (Emphasis added.)

Other principles of constitutional construction

aid in our task as well. In *Council 23 AFSCME v Wayne County Civil Service Comm,* 32 Mich App 243, 247-248; 188 NW2d 206 (1971), the Court stated that: "There is a presumption that words in the Constitution have been used according to their plain, natural import, and a court is not at liberty to disregard the plain meaning of the words in order to search for some other conjectured intent." In *White v The Detroit Edison Co,* 80 Mich App 346, 350; 263 NW2d 367 (1977), the Court stated: "[F]ramers of a constitution are presumed to have a knowledge of existing laws and to act in reference to that knowledge." Finally, we note a recent comment by the Supreme Court: "[C]onstitutional provisions must be interpreted within the context of the times." *People v Neumayer,* 405 Mich 341, 365; 275 NW2d 230 (1979).

Applying the foregoing principles to the instant case, especially the first and primary rule of "common understanding" as described by the Supreme Court in *Traverse City School Dist, supra,* we believe that the language of article 10, § 1, clearly and naturally conveys to the people of this state the message that the common law disability of coverture, at least as it relates to property, has been abolished. If the drafters had another intent, they have failed to express it.

In addition, we reject the distinction drawn by the *Kloostra* Court between disabilities and defenses. On this point we are in accord with the commentator who wrote:

"The distinction between disabilities and defenses is, however, without support in Michigan case law. Although the Michigan supreme court has sometimes referred to the disabilities of coverture as defenses of coverture, when the disability was asserted in defense

to a suit, it has never been suggested that the two terms can be separated and viewed as distinct concepts.

\* \* \*

"Finally, as a matter of fundamental policy, it is necessary to realize that the disabilities and defenses of coverture are inextricably part of the same concept." Note, *The Impact of Michigan's Common-Law Disability of Coverture on Married Women's Access to Credit,* 74 Mich L Rev 76, 98, 99 (1975).

Therefore, from both a "common understanding" of the provision and from a legal standpoint, we see no basis for distinguishing between defenses and disabilities. This conclusion is supported by the fact that the disabilities and defenses of coverture are indeed inextricably part of the same concept. It would be highly inequitable to allow a married woman to rely on the abolishment of the disability aspect in one instance while allowing her to implore it as a defense in another. See *Arnett v Kennedy,* 416 US 134; 94 S Ct 1633; 40 L Ed 2d 15 (1974).

Application of the other rules of construction leads us to the same result. For example, we must presume that the delegates to the convention were aware that the various amendments to the Married Women's Property Act had gone far toward placing husband and wife on equal footing in regard to their respective abilities to contract, and that this relative equality had not been achieved overnight but was the result of changing social conditions culminating in the near abolition of the principle of coverture. In light of this trend toward equal status, this progressive march toward the total destruction of coverture, and in light of the unequivocal language chosen by the delegates, we conclude that the purpose of the amendment was to completely abrogate what final remnants of

coverture remained and to relegate the antiquated doctrine to "history's legal museum". See *Detroit Newspaper, supra,* 147.

We believe this interpretation is sound for yet another reason. Constitutional provisions must be interpreted within the context of the times. *People v Neumayer, supra.* With the approval of the Equal Rights Amendment, and the passage of equal credit opportunity legislation, to mention only a couple of measures, Michigan has demonstrated its concern and support for laws treating men and women equally. In short, reviewed in the present day context, the constitutional provision is a reflection of our modern notions of equal rights for all persons, including those who choose to marry.

We hold, therefore, that the common law disabilities of coverture as to property are abolished and that appellant's defense, that she received no consideration inuring to her separate estate, is without merit. We thus affirm the trial court's ruling as to defendant's joint liability but reverse the trial court's ruling as to defendant's several liability.

The second issue we have to decide is whether plaintiff is entitled to recover its reasonable attorney fees. The May 22, 1974, Master Equipment Lease Agreement provided that in the event of default:

"Lessor, shall, nevertheless, have a right to recover from Lessee * * * reasonable expenses, including reasonable attorneys' fees, which lessor shall have sustained by reason of the breach of any covenant or covenants of this lease."

Similar language appeared in the personal guaranty that Mr. and Mrs. Cardillo executed contem-

poraneously with the lease. In addition, plaintiff's counsel requested attorney fees in his opening statement.

We hold that it was error for the trial court to deny plaintiff the opportunity to present evidence to establish a contractual right to attorney fees. In *United Growth Corp v Kelly Mortgage & Investment Co,* 86 Mich App 82, 89-90; 272 NW2d 340 (1978), this Court held that, in the case of a contractual stipulation between the parties for reasonable attorney fees, such fees may be allowed but must be measured by the fair value of the services rendered, citing *Security Trust Co v Solomon,* 241 Mich 52; 216 NW 405 (1927). We, therefore, remand this matter to the trial court for an evidentiary hearing, at which time proofs shall be taken on the question of reasonable attorney fees.

Remanded for proceedings consistent with this opinion.

No costs, a public issue being involved.