In the Matter of William E. McCORMICK, a/k/a William Edward McCormick, a/k/a Ed McCormick, Debtor.

MICHIGAN NATIONAL BANK OF DETROIT, a national banking association, Plaintiff,

v.

William E. McCORMICK, Sally McCormick, Librio L. Settipani and Miriam Settipani, Defendants.

Bankruptcy No. 82–00589–W.
Adv. No. 82–1079–W.

United States Bankruptcy Court, E.D. Michigan, S.D.

Jan. 20, 1983.

Denis W. Budds, Flat Rock, Mich., for William McCormick.

Kenneth D. Kruse, Allen Park, Mich., for Sally McCormick.

Jere D. Johnston, Detroit, Mich., for Michigan Nat. Bank of Detroit.

Richard C. McKnight, East Detroit, Mich., for Settipanis.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This matter is before the Court on the motion of Michigan National Bank of Detroit (MNBD) for partial summary judgment.

In 1974, William E. McCormick, the debtor, was vice president and 50% shareholder of Mariner Yacht Sales. MNBD floor planned Mariner Yacht Sales inventory of boats. Additionally, MNBD purchased from Mariner Yacht Sales installment contracts for the sale of boats.

In late 1977, the debtor fell behind in the payment of loans held by MNBD. On October 27, 1977, MNBD accelerated all indebtedness owed on retail contracts with Mariner Yacht Sales as well as indebtedness owed personally by the debtor and Sally McCormick, his wife. MNBD asserts that the total amount of the above loans is $49,-782.11.

On December 27, 1977, William and Sally McCormick executed a security agreement and note on the principal amount of $50,-875.00 to cover the indebtedness of the prior loans. The security agreement provides as follows:

> The Undersigned . . . for value received, hereby grants to MICHIGAN NATIONAL BANK of Detroit, Michigan (hereinafter called the "Bank"), a security interest in the following property and equipment now or hereafter affixed thereto or used in connection therewith . . .: Second mortgage on premises, 25547 Haskell, Taylor, MI, and security interest in equipment, inventory and personal property located at 2651 Biddle, Wyandotte, MI, 2645 Riverside Dr., Trenton, MI, 14737 Champagne, Allen Park, MI, and 13420 Gratiot, Detroit.

The premises located in Taylor, on which a second mortgage was executed was William and Sally McCormick's residence. MNBD subsequently foreclosed on the premises, resulting in a credit of $12,000.00 to the indebtedness owed.

The property located on Gratiot in Detroit was owned by William McCormick and known as the Four M Bar. As previously noted, the secured interest of MNBD included equipment, inventory and personal property. MNBD perfected its security interest on January 13, 1978 by duly filing a financing statement with the Michigan Secretary of State. The financing statement covered the following property:

> All of the personal property, inventory and equipment of debtor presently located at 13420 Gratiot, Detroit, MI and any and all after acquired property, including the attached Schedule A. Furthermore,

all interest in the Class C license issued by the Michigan Liquor Control Commission, State of Michigan is hereby assigned to Michigan National Bank of Detroit whereever permitted for the indebtedness unto said bank.

In 1980, William McCormick sold the Four M Bar to Miriam Settipani, his sister. The sale included the equipment, inventory and the liquor license.

William McCormick subsequently filed for relief under Chapter 7. On June 17, 1982, MNBD filed an adversary complaint objecting to discharge and for relief from stay of proceedings, naming as defendants William E. McCormick, Sally McCormick, Miriam Settipani and Librio Settipani. On November 5, 1982, MNBD moved for partial summary judgment with regard to the following issues: (a) whether Sally McCormick is liable to MNBD on the December 27, 1977 note; (b) whether Miriam Settipani purchased the inventory, equipment and liquor license for the Four M Bar subject to the perfected security interest of MNBD; (c) whether William McCormick's debt to MNBD is excepted from discharge pursuant to 11 U.S.C. § 523.

## A. The Liability of Sally McCormick on the December 27, 1977 Note

MNBD asserts that Sally McCormick is liable on the December 27, 1977 note for the indebtedness remaining after foreclosure on the marital home. Sally McCormick, now divorced from the debtor, argues that her liability on the note is limited to her interest in the marital home.

Sally McCormick relies on M.C.L.A. § 557.52, *et seq.*, repealed in 1981. M.C.L.A. § 557.52 provided:

Hereafter married women shall be possessed of the power and capacity, and it shall be competent for them to bind and makes [make] themselves jointly liable with their husbands upon any written instrument as hereinafter provided. *Said liability to extend, however, only to the property described in the following section.* (Emphasis added.) 1917 P.A. 158,

§ 2, as amended by 1929 P.A. 287; M.C. L.A. § 557.52.

M.C.L.A. § 557.53 provided:

Hereafter the real estate of the husband and wife owned by them as tenants by entirety, or the real estate acquired by either as survivor of the other, or in the event of divorce the interest of either in real estate which was previously owned by them as tenants by the entirety, shall be liable to seizure and sale on execution, and all personal property and choses in action owned by husband and wife jointly with right of survivorship therein, shall be subject to writ of garnishment and all other process provided by law, in satisfaction of any judgment which has been recovered against the persons who were at the time of the execution of such written instrument husband and wife jointly or the survivor upon any instrument signed by both. *In case the wife is the survivor, or in case the husband and wife have been divorced prior to the recovery of the judgment, a judgment against the wife may be satisfied only out of such property.* (Emphasis added.) 1917 P.A. 158, § 3, as amended by 1929 P.A. 287, M.C.L.A. § 557.53.

In contrast to M.C.L.A. § 557.52 and 557.-53 is Article 10, § 1 of the 1963 Michigan Constitution:

*The disabilities of coverture as to property are abolished.* The real and personal estate of every woman acquired before marriage and all real and personal property to which she may afterwards become entitled shall be and remain the estate and property of such woman, and shall not be liable for the debts, obligations or engagements of her husband, and may be dealt with and disposed of by her as if she were unmarried. Dower may be relinquished or conveyed as provided by law. (Emphasis added.)

The conflict between M.C.L.A. § 557.52 *et seq.* twice has been considered by the Michigan Court of Appeals. *See e.g., City Finance Company v. Kloostra,* 47 Mich.App. 276, 209 N.W.2d 498 (1973); *Michigan National Leasing v. Cardillo,* 103 Mich.App. 427, 302 N.W.2d 888 (1981).

In *Kloostra,* suit was maintained by a finance company against a woman who had co-signed a note with her former husband. The woman sought to defend on the ground that consideration did not pass to her separate estate and therefore, pursuant to M.C. L.A. §§ 557.52 through 557.54, the judgment should be satisfied only from the property owned jointly by the couple. The trial judge held that those statutes relied upon by defendant had been superseded by Article 10, § 1; hence the defendant was individually liable on the note.

The Court of Appeals rejected the trial court's analysis. The appellate court held that the defense of coverture contained in M.C.L.A. §§ 557.52 through 557.54 remains available to a married woman as a defense to individual liability on a contract in the absence of consideration passing to her separate estate.

In *Cardillo,* plaintiff brought suit in 1977 against Cardillo Equipment Company, Inc., Frank Cardillo, its president and his wife, Shirley Cardillo, jointly and severally. Plaintiff sought recovery for breach of a lease entered into by Cardillo Equipment Company and breach of a guarantee executed by Frank and Shirley Cardillo. Shirley Cardillo asserted that the guarantee was void due to coverture. The trial court found for plaintiff, but held that the judgment against Shirley Cardillo was joint with her husband, not several.

The Court of Appeals noted that resolution of the issue of the viability of coverture necessitated a reconsideration of *Kloostra.* It began its analysis by recognizing the two grounds on which *Kloostra* was based:

First, by delving deeply into the record of the 1961–1962 Constitutional Convention, the Court determined that the reasons set forth by the supporters of the constitutional provision were "inconsistent with an intent [that it] supersede the married women's property act". *Kloostra, supra,* [47 Mich.App.] 285 [, 209 N.W.2d 498]. Second, the *Kloostra* Court held that, although the disabilities of coverture were abolished by the 1963 Constitution, arti-

cle, § 1, the defense of coverture survived. *Kloostra, supra,* 288–289 [, 209 N.W.2d 498].

103 Mich.App. at 431, 302 N.W.2d 888. Following an in-depth discussion of the principles of constitutional construction, the Court rejected both grounds. It held that the 1963 Constitution, Article 10, § 1, had abrogated the doctrine of coverture in Michigan:

We hold, therefore, that the common law disabilities of coverture as to property are abolished and that appellant's defense, that she received no consideration inuring to her separate estate, is without merit. We thus affirm the trial court's ruling as to defendant's joint liability but reverse the trial court's ruling as to defendant's several liability.

103 Mich.App. at 435, 302 N.W.2d 888.

Leave to appeal the *Cardillo* opinion was granted on November 4, 1981. However, leave was denied on May 28, 1982, for the reason that the case was not jurisdictionally significant in view of the enactment of M.C.L.A. § 557.21 *et seq.*

M.C.L.A. § 557.26, which superseded M.C. L.A. § 557.52 through 557.54, provides in pertinent part:

(1) A married woman may enter into a written contract pledging or assigning her interest in her separate property, as described in section 1, as security for the debt of another person, including the debt of her husband. If a married woman signs a written contract pledging or assigning an interest in her separate property as security for the debt of another person or her husband, a judgment rendered for payment of the debt may be satisfied out of that separate property whether or not the separate property derives a benefit from the pledge or assignment.

(2) A married woman may enter into a written contract giving a general guarantee obligating her personally for the debt of another person, including the debt of her husband. If the married woman signs such a written contract, a judgment rendered for payment of the debt may be

satisfied out of any of the separate property of the married woman described in section 1, whether or not the separate property derives a benefit from the general guarantee.

1981 P.A. 216 § 6; M.C.L.A. § 557.26 (note omitted).

■ Had M.C.L.A. § 557.26 been in effect in 1977, this matter would not now be before us. Such is not the case. However, Article 10, § 1, of the 1963 Michigan Constitution was in effect in 1977 and we, as the Court in *Cardillo,* find that "Article 10, § 1, clearly and naturally conveys to the people (of Michigan) the message that the common law disability of coverture has been abolished." 103 Mich.App. at 433, 302 N.W.2d 888. Accordingly, we hold that defendant Sally McCormick is jointly and severally liable to plaintiff MNBD on the December 27, 1977 note.[1]

**B. The Interest of MNBD in the Equipment, Inventory and Liquor License of the Four M Bar Purchased by Miriam Settipani from William McCormick**

MNBD asserts that it has a perfected security interest in the equipment, inventory and liquor license of the Four M Bar purchased by Miriam Settipani from William McCormick. The briefs filed by Miriam and Librio Settipani do not address the issue of MNBD's interest in the equipment or inventory other than alcoholic liquor. However, Miriam and Librio Settipani do assert that MNBD's security interest in the liquor license and the inventory which consists of alcoholic liquor is invalid pursuant to Rule 19 of the Michigan Liquor Control Commission, Section R436.1119 of the Michigan Administrative Code.

Rule 19, effective as of March 15, 1978, provides in pertinent part:

A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party,

shall not include the license or alcoholic liquor.

Resolution of the present issue necessitates a review of the history of Rule 19. In 1976, the Michigan Court of Appeals held that the standards by which the Michigan Liquor Control Commission evaluates license applicants must be in the form of promulgated and published rules. *Mallchok v. Liquor Control Commission,* 72 Mich.App. 341, 249 N.W.2d 415 (1976). Pursuant to the Court's ruling, the Michigan Liquor Control Commission, on February 14, 1977, adopted emergency rules governing licensing qualifications. The emergency rule which preceded Rule 19 was Rule 23(6). It provided as follows:

A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party, shall not include alcoholic liquor.

The emergency rules expired after a period of one year. They were replaced by the permanent rules, including Rule 19, effective as of March 15, 1978. *See generally, T.D.N. Enterprises, Inc. v. The Liquor Control Commission,* 90 Mich.App. 429, 280 N.W.2d 827 (1979).

The effect of Rule 19 on a secured interest granted in a liquor license was considered by Judge Walker in *In Re Rudy's, Inc.; Alexander G. Andrews v. City of Rochester,* 23 B.R. 1 (Bkrtcy.1981). In *Rudy's,* the Bank of the Commonwealth took a security interest in the liquor license and liquor inventory of the debtor on October 10, 1978. It perfected its interest by filing a financing statement on March 29, 1979. Judge Walker held that a security interest in a debtor's liquor license, liquor inventory or the proceeds thereof is not valid under Rule 19. Judge Walker distinguished an earlier decision by Judge Brody, which upheld a lien in a liquor license pursuant to a security agreement, on the basis that it failed to consider the impact of Rule 19 on the lien's validity. *See, In Re Matto's, Inc.,* 9 B.R. 89 (Bkrtcy.E.D.Mich.1981).

---

**1.** MNBD requests in its motion for partial summary judgment that a judgment be entered against Sally McCormick in the amount of $40,673.68 plus interest, costs and attorney fees. Although the Court grants MNBD's motion as

to Sally McCormick's liability, it denies MNBD's prayer for judgment at this time, as MNBD has failed to show how it arrived at the figure of $40,673.68. Costs and attorney fees are to be borne by the respective parties.

The facts of *Matto's* were as follows. Olde Colonie Place sold all of its assets, including a liquor license, to F.J. and F. Inc. in November, 1976. F.J. and F. thereafter assigned the license to Olde Colonie and granted Olde Colonie a security interest in the other conveyed assets. In April of 1979, F.J. and F. sold the assets including the liquor license to Matto's subject to the security interest of Olde Colonie. On June 4, 1980, Matto's sought relief under Chapter 11. On November 14, 1980, the debtor filed a complaint alleging that the assignment was a security interest and, since Olde Colonie did not file a financing statement with the Michigan Secretary of State, the assignment did not survive the filing of the Chapter 11 proceeding.

Judge Brody framed the question before the Court as "whether a liquor license is property and, if it is, whether Article 9 of the Uniform Commercial Code is applicable." 9 B.R. at 91. Judge Brody first determined that, for purposes of bankruptcy, a liquor license is "property". He then held that, under the Michigan statutory requirement that financing statements be filed to perfect a security interest in personal property, the assignee of a liquor license, who was also the assignee of a security interest in other conveyed assets to secure payment of the purchase price, was required to file a financing statement with respect to the liquor license. Judge Brody concluded that as the assignee had failed to file he forfeited his claim against the license in bankruptcy court.

A reading of Rule 19 suggests that as of March 15, 1978, a valid security interest could not be obtained in a Michigan liquor license or liquor inventory. Such a conclusion is supported by the holding of Judge Walker in *In Re Rudy's, supra.*

The security interest in this matter, however, was perfected on January 13, 1978, several months prior to the effective date of Rule 19. A reading of Rule 23(6) in effect at the time, does not suggest that a security interest in a liquor license is invalid. Indeed, the lack of language prohibiting the acquisition of a security interest in a liquor license in Rule 23(6) indicates to us that in January, 1978, when the present security interest was perfected, an interest in a liquor license was valid. Such a conclusion is supported by the opinion of Judge Brody in *In Re Matto's, Inc., supra.*

■ Under the foregoing analysis, Rule 19 will render the perfected security interest of MNBD in the liquor license invalid only if it is retroactively applied. Nothing in the language of Rule 19 indicates that it was intended to have retroactive effect. As a general rule, a law is presumed, in the absence of clear expression to the contrary, to operate prospectively. *Weldon v. Board of Education of the School District of Detroit,* 403 F.Supp. 436 (D.C.Mich.1975). *See also, Hughes v. Judges Retirement Board,* 407 Mich. 75, 282 N.W.2d 160 (1979).

Accordingly, we hold that plaintiff MNBD has a valid perfected security interest in the equipment and liquor license of the Four M Bar purchased by defendant Miriam Settipani. We further hold that, to the extent that the inventory of the Four M Bar consists of items other than alcoholic liquor, MNBD has a perfected security interest in the inventory. Having reached the above conclusion, the Court need not decide the issue raised by MNBD, whether the Michigan Liquor Control Commission has the authority to adopt Rule 19, and the Court renders no opinion on that question.[2]

C. Exception from Discharge of the Debt of William McCormick to MNBD Pursuant to 11 U.S.C. § 523

MNBD asserts that William McCormick's debt is excepted from discharge by his "admitted false pretenses and representations in obtaining the loan(s) and his actions in wrongfully transferring the property securing the loan." Amended Brief of MNBD at

---

**2.** Similarly, the Court need not consider the issues briefed by counsel for the Settipanis, that the sale of the Four M Bar was for adequate consideration or that the Settipanis were released from liability on a 1974 note, as these issues were not addressed in MNBD's motion and therefore are not properly before us.

p. 14. We find that there exists a genuine issue of fact with respect to whether William McCormick's debt is excepted from discharge. Therefore, pursuant to Federal Rule of Civil Procedure 56, as adopted by Bankruptcy Rule 756, MNBD's motion with regard to this issue is denied.

Accordingly, the motion of MNBD for partial summary judgment is GRANTED in part and DENIED in part.

So ordered.