**In the Matter of Thomas and Claudia HOERNER, Debtors.**

**Bankruptcy No. NL 82 00224.**

United States Bankruptcy Court, W.D. Michigan.

Feb. 14, 1983.

## OPINION

### OBJECTION TO CLAIM—MARRIED WOMEN'S PROPERTY ACT

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the court on the debtors' objection to a claim filed by Household Finance Company.[1] The debtors con-

---

1. This court has jurisdiction to resolve this matter under the emergency local rule adopted December 17, 1982, paragraph (d).

tend that the Married Women's Property Act, MSA § 26.161 *et seq.* [M.C.L.A. § 557.1 et seq.] was the effective law at the time of the transaction. Under that Act, the debtors urge Claudia Hoerner cannot be liable on her ex-husband's loan since she has no joint property with her ex-husband, and no benefit accrued to her separate estate.[2]

There is a split of authority in Michigan on this subject. In *City Finance Company v. Kloostra,* 47 Mich.App. 276, 209 N.W.2d 498 (1973), the Court held that the Married Women's Property Act is still the law despite the Michigan Constitution's abolition of the common law disabilities of coverture as to property. Article X, § 1. More recently, in *Michigan National Leasing Corp. v. Cardillo,* 103 Mich.App. 427, 302 N.W.2d 888 (1981), a different appellate panel reconsidered the *Kloostra* decision, and held that the common law disabilities of coverture were abolished, and a defense based on failure to receive consideration to a separate estate was without merit. On November 4, 1981, the Michigan Supreme Court granted leave to appeal the decision in *Cardillo,* however, that grant was later vacated. 412 Mich. 857 (1982). The Michigan Legislature has repealed the Married Women's Property Act, *See,* Public Acts 1981, No. 216. The Law now specifically provides that if a married women signs a contract as a guarantor, her separate property can satisfy a judgment even if she derives no benefit from the loan. MSA § 26.165(6)(2) [M.C.L.A. § 557.26(2)].

At issue here is the effect of Article X, Section 1 of the state constitution. That Article provides, in part:

Disabilities of coverture abolished; separate property of wife; dower. Sec. 1. *The disabilities of coverture as to property are abolished.* The real and personal estate of every women acquired before marriage and all real and personal property to which she may afterwards become entitled shall be and remain the estate and property of such woman, and shall not be liable for the debts, obligations or engagements of her husband, and may be dealt with and disposed of by her as if she were unmarried. Dower may be relinquished or conveyed as provided by law. (emphasis added).

In interpreting this section, the court in *Kloostra* looked to the intent of the delegates at the Constitutional Convention. The court concluded that there was no intent to make married women jointly and severally liable on a joint obligations with her husband. An effort was made by the court to create a distinction between the disabilities of coverture which were abolished, and the defenses of coverture which still existed. I would agree with the *Kloostra* court that the drafters of this section probably did not intend to entirely abolish coverture.[3] However, I find any distinctions between the disabilities and defenses of coverture strained at best.

After the *Kloostra* decision, courts continued to apply the defense of coverture in situations where the wife's separate estate was sought to satisfy a judgment obtained against a husband and wife on a joint obligation. However, there was a growing reluctance to follow the doctrine. In *United States v. Yazell,* 382 U.S. 341, 351, 86 S.Ct. 500, 506, 16 L.Ed.2d 404 (1966), the Supreme Court stated that the "institution of coverture is peculiar and obsolete" and noted that it exists in a modified form only in one state, Michigan.[4] In *United States v. Interlakes Machine & Tool,* 400 F.Supp. 59, 64 (E.D.Mich.1975), the court recognized that

---

**2.** At the hearing, however, no evidence was presented as to whether Mrs. Hoerner owns any property which was previously owned jointly with her ex-husband.

**3.** An excellent note on the intent of the delegates to the Constitutional Convention affirms this conclusion. Note, *The Impact of Michigan's Common-Law Disability of Coverture on*

*Married Women's Access to Credit,* 74 Mich.L. Rev. 76 (1975).

**4.** The law of coverture in Texas was repealed by statute during the pendency of the *Yazell* case. While other states placed limitations on the right of married women to contract, only Michigan retained a common law coverture provision.

Michigan retained a vestige of coverture. That decision was later reversed in *United States v. Lowell,* 557 F.2d 70 (6th Cir.1970) where it was held that the law of coverture was not applicable to a federal Small Business Administration loan. A federal regulation provided that loan instruments would be construed and enforced in accordance with federal law. The court relied on the regulation for its ruling, but went on to declare that:

> federal law mandates that the "peculiar and obsolete" *United States v. Yazell,* supra 382 U.S. at 351, 86 S.Ct. 500 [at 506], law of coverture not be allowed to stifle the federal government programs in Michigan, when it would not be applicable in any other state in the union. p. 74.

In *Isabella Bank and Trust v. Pappas,* 79 Mich.App. 274, 261 N.W.2d 558 (1977) the court recognized the coverture defense, but held that the issue of whether consideration passed to a wife's separate estate could not be resolved by affidavits, since there was a presumption that she would benefit from the guaranty. A factual question was presented that could only be resolved by weighing the wife's testimony and credibility. *Supra* at 279, 261 N.W.2d 558. None of these cases, however, had to confront the inconsistency between the Married Women's Property Act and the state constitution.

Finally, in *Michigan National Leasing Corp. v. Cardillo, supra,* another Michigan appellate panel was required to address the conflict between the constitution and the statute. In *Cardillo,* the court looked to the plain meaning of the constitution itself. The court concluded that the language of Article X, Section 1 clearly states that coverture is abolished. The delegates to the convention failed to express any other intent. *Supra* at 433, 302 N.W.2d 888. Since the statute was in conflict with the Consti-

tution, a defense premised on coverture was without merit.

I believe the opinion of *Cardillo* expresses the better view on this subject. What the delegates to the constitutional convention intended to achieve is not that relevant to the decision. The language of the section is clear. Any attempt to read into it a distinction between the disabilities and defenses of coverture is sophistry.

The court in *Cardillo* applied several tests of construction to determine the meaning of Article X, Section 1 of the Constitution. That court determined that the language clearly and naturally conveys the message that coverture is abolished. The principle rule of construction is that enunciated by Justice Cooley in his treatise, and set forth in *Traverse City School District v. Attorney General,* 384 Mich. 390, 405, 185 N.W.2d 9 (1971), and *Cardillo, supra* at 432, 302 N.W.2d 888.

> "A constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, *the intent to be arrived at is that of the people,* and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding* and ratified the instrument in the belief that that was the sense designed to be conveyed.' (Cooley's Const Lim 81)." (Emphasis added.)

The other tests employed: the "natural significance," [5] and the "plain meaning" [6] rule, are variations of this principal. Applying these various tests of constitutional interpretation to Article X, Section 1, it is clear that the people of Michigan could only believe that coverture was to be completely

---

5. *See, People v. Board of State Canvassers,* 323 Mich. 523, 35 N.W.2d 669 (1949).

6. *See, Council 23 v. Wayne County CSC,* 32 Mich.App. 243, 247, 188 N.W.2d 206 (1971);

abolished.[7] Reasonable minds could read the words no other way.

Therefore, I conclude that all remnants of coverture were abolished by the adoption of the new constitution. Any other reading of this section insults the plain meaning of those words. If the drafters intended something else, they did not cystalize that intent in writing, nor did they convey that view to the people. Since coverture was abolished, and no longer is a defense for a married woman who co-signs a note with her husband, the debtor here is liable to HFC regardless of whether consideration passed to her separate estate. Accordingly, the claim of HFC will be allowed.

*Berry v. School Dist. of City of Benton Harbor,* 467 F.Supp. 721, 732 (W.D.Mich.1978).

**7.** As part of the work of Michigan's Constitutional Convention, the delegates were required to prepare an address to the people of the state explaining the proposed changes, and the reasons for such changes. The work was entitled, *What the Proposed New State Constitution Means to You* (August 1, 1962). The comments after Article X, Section 1 state:

> This is a revision of Sec. 8, Article XVI, of the present constitution. The first sentence is new language which declares that "the disabilities of coverture as to property are abolished." Added to the section is the concluding sentence: "Dower may be relinquished or conveyed as provided by law."

Given this explanation by the delegates, it is impossible that the citizens of the state believe they were doing anything other than abolishing coverture entirely.